THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THOMAS J. KELLY, Appellant.

*Arson — when proofs of loss are inadmissible as to the value of the premises — evidence of good character — over-valuation — circumstantial evidence — reasonable certainty of guilt.*

The statutory presumption, declared by section 389 of the Code of Criminal Procedure, " that a defendant in a criminal action is presumed to be innocent until the contrary is proved," is strengthened by testimony of the good character of the defendant; and in a doubtful case such evidence is entitled to great weight.

Where a question of fact is to be determined on a criminal trial from circumstantial evidence, the facts proved must not only be consistent with and point to the guilt of the prisoner, but they must be inconsistent with his innocence; and where different inferences may be drawn from the same circumstances,

it is the duty of the court to presume in favor of innocence rather than of intentional and guilty misconduct.

On the trial of a party under an indictment for arson, proofs of loss made by the defendant, after the fire in question, showing a value less than the amount of the insurance, where such proofs of loss do not purport to contain a schedule of all the property insured, and are claimed by the defendant to be merely a statement of the property which was damaged or destroyed by the fire, are not competent evidence on the question of over-valuation, unless accompanied by other proof of an actual over-valuation of the property insured, or by proof that the schedules did contain a statement of all the insured property.

In such a case the over-insurance of buildings cannot be held to have constituted a motive upon the part of the defendant to burn them, unless it is shown that the defendant believed or knew that the buildings were over-insured. The presumption may be indulged that he knew that he could only recover the actual value of the property.

APPEAL by the defendant, Thomas J. Kelly, from a judgment of the Ulster County Court, rendered on June 12, 1896, convicting him of the crime of arson in the second degree.

*F. Arthur Westbrook* and *John J. Linson*, for the appellant.

*Charles F. Cantine, District Attorney*, for the respondent.

PUTNAM, J.:

The defendant was tried in June, 1896, at the Ulster County Court, under an indictment charging him with the crime of arson in the second degree, in setting fire to his own buildings in the city of Kingston on the 3d day of February, 1896, was convicted and sentenced to the State prison at Dannemora for seven years and two months. It was not claimed that he personally committed the criminal act. The fire was evidently the work of an unknown incendiary, and no connection between the act of such person and defendant was shown by any direct evidence. He was sought to be charged as a principal for causing the fire, or for aiding or abetting in the commission of the offense by the unknown incendiary, under the provisions of section 29 of the Penal Code. His criminal agency was inferred from certain circumstances and admissions which will be hereinafter considered.

I see no reason to doubt that under the provisions of section 29 of the Penal Code the defendant could be convicted of the offense charged as a principal, although he did not directly cause the fire, and

the person who did was not identified. Tho fire being started by an unknown incendiary, if the evidence was sufficient to establish the defendant's connection with the act, or to show that he aided or abetted in the commission of the offense, or directly or indirectly counselled, induced or procured the criminal act by the unknown party, he could be held as a principal.

I am unable to discover any error in the able and impartial charge of the county judge, or in any of his rulings on the trial, except in the following, which resulted from an inadvertent mistake as to the evidence.

On the trial, the People, on the question of the motive of the prisoner, sought to show an over-insurance on his buildings and on the furniture and personal property therein. With this object the People proved that the defendant, at the time of the fire, had policies of insurance on his personal property, by which the same was insured for the sum of $2,800. To show that the value of the insured property was less than the amount for which it was insured, the respondent read in evidence the proofs of loss made by the defendant after the fire, the value of the property stated in the proofs being less than the amounts of the insurance. The proofs, however, did not purport to contain a schedule of all the property insured, but only of the property damaged or destroyed. They were competent evidence as to value in connection with other testimony to show that the schedules therein contained a statement of all the property covered by the policies of insurance, but no such testimony was produced. The defendant swore that the schedules in question only set forth such part of the insured personal property as was damaged or destroyed, not the whole of it. While the jury were not compelled to credit his testimony, yet to show an over-insurance, it was incumbent on the prosecution to prove that the schedules did contain a statement of all the insured property, or to show an over-insurance in some other way. This was not done. I think, therefore, that the trial judge should have granted the defendant's motion made at the close of the case to strike out the evidence in regard to the policies of insurance on personal property. There was not competent evidence that such property was insured for more than its value. The jury, however, were suffered to consider the proofs of loss of a portion of the insured property as an evi-

dence of an over-insurance on the whole, and, therefore, to find a motive on the part of the defendant to burn his buildings. On the evidence in the case the jury should not have been allowed to consider the question of the over-valuation of the personal property.

I have also reached the conclusion with some hesitation, after a careful consideration of the case and examination of the evidence, that such evidence was not sufficient to show the defendant's responsibility for the fire in question.

There is no evidence to show that the defendant personally made any preparations for the fire. The testimony does not show any connection whatever between him and the unknown incendiary. While it is impossible to read the testimony without having some suspicion of the defendant, I think that the evidence was not sufficient to convict.

In examining this, as in all criminal cases, it is desirable to constantly bear in mind the presumption of innocence which always exists in favor of a person charged with a crime — a presumption sometimes lost sight of in this class of cases. It is now provided by statute that " a defendant in a criminal action is presumed to be innocent until the contrary be proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal." (Code Crim. Proc. § 389.)

This presumption is strengthened in this case by the testimony as to the previous good character of the defendant given by a large number of prominent citizens of the city and county where he had lived, which was uncontradicted by any evidence produced by the People. In a doubtful case such evidence is entitled to great weight. (*Remsen* v. *The People*, 43 N. Y. 6 ; *People* v. *Sweeney*, 133 id. 609 ; *Stover* v. *People*, 56 id. 315.)

This presumption is further strengthened by the fact that the evidence offered by the People to show a motive on the part of the defendant to burn his property, was, to say the least, weak and unsatisfactory. As we have seen, the People failed to show an over-insurance on the personal property. There was evidence to the effect that the buildings were insured $1,400 beyond their value. But it appears that such insurance was in pursuance of a contract made nearly four years before the fire between the owner of the property, Maxwell, and defendant, and was payable to Maxwell.

There is nothing in the case to show that the act of Maxwell and defendant in fixing the insurance at $5,000 was not an honest over-valuation of the property; nothing to show that those parties intended to defraud the insurance companies who issued the policies on the buildings by an over-insurance. We may take notice of the fact that an honest over-valuation of one's property is common. To justify a finding that the over insurance of the buildings constituted a motive on the part of the defendant to burn them, it should have been shown that he believed or knew that they were over-insured. Under the evidence in this case there was no presumption to that effect. The defendant did not erect the buildings, and was not shown to have any knowledge as to their value. The amount of the insurance was determined four years before by the contract with Maxwell, the owner. The presumption should be entertained that Maxwell and he insured the property for what they deemed its fair value. I think also that the defendant should be presumed to have known that, under the law and his insurance contract, he could only recover the actual value of the building, and that such value, the building being a well-known structure in one of the public streets of the city of Kingston, was easily ascertainable by insurers.

Starting then in the examination of this case with a presumption of innocence existing in favor of the prisoner, strengthened in the case by the overwhelming testimony as to his previous good character, and the absence of any satisfactory evidence of a sufficient motive on his part to burn his property, and there being no direct evidence whatever to connect him with the fire, do the circumstances and admissions proved on the trial so point to his guilt as to justify the verdict of the jury? It is a well-settled doctrine that in determining a question of fact on a criminal trial from circumstantial evidence, the facts proved must not only be all consistent with and point to the guilt of the prisoner, but must be inconsistent with his innocence. (*People* v. *Bennett*, 49 N. Y. 137.)

As said by DENIO, J., in *Shepherd* v. *The People* (19 N. Y. 537–545): " In such cases the circumstances themselves must be satisfactorily established, and they must be of such a character as, if true, to exclude to a moral certainty every other hypothesis but that of the guilt of the accused." (See, also, *Commonwealth* v. *Webster*, 5 Cush. 295, 296; *Miles* v. *United States*, 103 U. S. 304.)

There are certain circumstances appearing in this case to which our attention has been called : The defendant's wife was absent in Brooklyn at the time of the fire ; he had refused to receive a lodger a few days before; he had obtained some straw on two occasions at some period before the third of February ; on the night of the fire, he had friends with him in his own house until half-past ten o'clock, and then left the house with them, going to the hotel of one Lenehan, where he remained until the time of the fire. It might be claimed from these circumstances that the prisoner was making preparations for the fire, and that, on the very night of the occurrence, he surrounded himself with friends so as to be able to show that he did not set fire to his building, and also that he was absent at the time that the offense was committed.

But the circumstances above adverted to are not inconsistent with the innocence of the defendant. On this criminal trial, under principles above adverted to, we have no right to suspect him because his wife at the time was on a visit to Brooklyn. It was not shown that his reason for not receiving a lodger a few days before the fire was not a good one, or that he did not require the straw for the purpose stated by him ; nor is it any just ground for suspicion that friends called upon the prisoner on the night of the fire and remained with him until half-past ten ; or that he, being alone in the house, should afterwards go to the hotel of Lenehan and, meeting an old friend there, remain until the time of the fire. "Where different inferences may be drawn from the same state of circumstances, it is the duty of the court to presume in favor of innocence rather than of intentional and guilty misconduct." (*Guidet* v. *N. Y., L. E. & W. R. R. Co.*, 9 N. Y. St. Repr. 26; 120 N. Y. 649.)

It has been suggested that it is to be inferred from the evidence that the unknown party who made the preparations for the fire broke through the partition between the premises occupied by Burns and defendant after the latter left the premises at half-past ten o'clock on the night of February second, and then made the extensive preparations for the fire that were discovered the next morning, and that such unknown party evidently reckoned on the defendant's absence, which he could not have done without connivance with him. But the unknown party or parties could probably have made the preparations for the fire which were found the next

morning in a very brief period. He or they may have had some person outside watching for the return of the prisoner. What more natural, if Burns desired to burn his building, than that he should break into the adjoining house and set fire to it and avert suspicion from himself? Inferences should not be drawn against the defendant from the facts above mentioned under the well-settled principles to which I have called attention.

I, therefore, conclude that no case was made against the defendant unless it was established by his own statements and admissions.

These statements were made to the witnesses, Heppner, Cunningham, Van Tassell, and the chief of police. The statements or admissions made to the last three are not of sufficient importance to require consideration. As to the conversation of the prisoner with Heppner, it should be remembered that it took place at the time of the fire, when both parties were necessarily excited and amid great confusion. Such evidence has always been deemed weak and inconclusive. Again, Heppner's statement of the transaction on his direct and on his cross-examination was contradictory, unsatisfactory and not probable.

When the defendant came up to the building Heppner was inside with two other men; other parties had been inside before; firemen were at work on the building, and it was impossible to prevent the firemen and the public, under the circumstances, from having free access to the building; as the defendant came up he saw that others besides Heppner were inside. It is difficult under the circumstances to see what object he had in pulling Heppner out of the building, as at the time, others were there, and he must have known that the firemen and public would necessarily have free access to the same. Assuming, however, that the defendant did pull Heppner out of the building, and afterwards asked him if he (Heppner) had spoken of that fact, and that on Heppner's saying no, he remarked that he was glad, because that would make him guilty, meaning it would make him appear guilty; that was very far from an admission by the defendant of guilt. It was merely a statement that an act of his would make him appear guilty. Under the circumstances, the testimony of Heppner as to the admission of the defendant is weak and inconclusive evidence.

Without Heppner's testimony no case was made against the defend-

ant; and I think that his evidence was not sufficient to overcome the presumption of innocence, strengthened in this case by the evidence of good character, and by the absence of any satisfactory proof of an adequate motive.  There are grounds of suspicion against the defendant, but I think that the evidence did not warrant a conviction. It was not " of a conclusive nature, leading, on the whole, to a satisfactory conclusion, and producing in effect a reasonable and moral certainty that the accused   *   *   *   committed the offence charged." (*Commonwealth* v. *Webster, supra.*)

The judgment should be reversed and a new trial granted.

PARKER, P. J., and MERWIN, J., concurred; LANDON and HERRICK, JJ., dissented.

Judgment of conviction reversed and a new trial ordered.