## PEOPLE v. KELLY.

(Supreme Court, Appellate Division, Third Department. December 2, 1896.)

1. ARSON—EVIDENCE—OVERINSURANCE.
    On a trial for arson, the jury should not be allowed to consider the question of overinsurance of personal property, where the only evidence thereof is that, in the proofs of loss, the property was valued at less than the insured amount, and there is no evidence that such proofs referred to all the property insured.
2. SAME—ESTABLISHING MOTIVE FOR CRIME.
    Proof that buildings were overinsured does not establish a motive for the owner to burn them, unless it is shown that he knew of the overinsurance.
3. SAME—SUFFICIENCY OF EVIDENCE TO CONVICT.
    A conviction of arson in aiding and abetting the burning of defendant's own house is not warranted by proof that defendant's wife was absent at the time, that he shortly before refused to receive a lodger, that he obtained straw twice before the fire, that he had friends with him until half-past 10 on the night of the fire, and that he left the house with them, and went to an hotel, where he remained until the fire, as these circumstances are not inconsistent with innocence.
4. SAME—PROOF OF COMPLICITY.
    Connivance of the owner of a house should not be inferred from the fact that incendiaries broke into the premises and made preparations during his absence.

**5. SAME—PRESUMPTION OF INNOCENCE—HOW OVERCOME.**

　　The presumption of innocence of a defendant charged with aiding and abetting the burning of his house is not overcome by testimony that, while the house was burning, defendant came up, and, seeing witness and others inside, pulled witness out, and that defendant afterwards told witness that he was glad witness had not spoken of it, because it would make defendant appear guilty.

　　Landon and Herrick, JJ., dissenting.

　　Appeal from Ulster county court.

　　Thomas J. Kelly was convicted of arson in the second degree, and appeals.　Reversed.

　　Argued before PARKER, P. J., and LANDON, HERRICK, MERWIN, and PUTNAM, JJ.

　　F. Arthur Westbrook (John J. Linson, of counsel), for appellant.
　　Charles F. Cantine, Dist. Atty., for respondent.

　　PUTNAM, J.　The defendant was tried in June, 1896, at the Ulster county court, under an indictment charging him with the crime of arson in the second degree in setting fire to his own buildings in the city of Kingston on the 3d day of February, 1896, and was convicted, and sentenced to the state prison at Dannemora for seven years and two months.　It was not claimed that he personally committed the criminal act.　The fire was evidently the work of an unknown incendiary, and no connection between the act of such person and defendant was shown by any direct evidence.　He was sought to be charged as a principal for causing the fire, or for aiding and abetting in the commission of the offense by the unknown incendiary, under provisions of section 29 of the Penal Code.　His criminal agency was inferred from certain circumstances and omissions which will be hereinafter considered.

　　I see no reason to doubt that, under the provisions of section 29 of the Penal Code, the defendant could be convicted of the offense charged as a principal, although he did not directly cause the fire, and the person who did was not identified.　The fire being started by an unknown incendiary, if the evidence was sufficient to establish the defendant's connection with the act, or to show that he aided or abetted in the commission of the offense, or directly or indirectly counseled, induced, or procured the criminal act by the unknown party, he could be held as a principal.

　　I am unable to discover any error in the able and impartial charge of the county judge, or in any of his rulings on the trial, except in the following, which resulted from an inadvertent mistake as to the evidence.　On the trial the people, on the question of the motive of the prisoner, sought to show an overinsurance on his buildings, and on the furniture and personal property therein.　With this object the people proved that the defendant, at the time of the fire, had policies of insurance on his personal property by which the same was insured for the sum of $2,800.　To show that the value of the insured property was less than the amount for which it was insured, the respondent read in evidence the proofs of loss made by the defendant after the fire, the value of the property stated in the

proofs being less than the amounts of the insurance. The proofs, however, did not purport to contain a schedule of all the property insured, but only of the property damaged or destroyed. They were competent evidence as to value, in connection with other testimony, to show that the schedules therein contained a statement of all the property covered by the policies of insurance; but no such testimony was produced. The defendant swore that the schedules in question only set forth such part of the insured personal property as was damaged or destroyed, not the whole of it. While the jury were not compelled to credit his testimony, yet, to show an overinsurance, it was incumbent on the prosecution to prove that the schedules did contain a statement of all the insured property, or to show an overinsurance in some other way. This was not done. I think, therefore, the trial judge should have granted the defendant's motion, made at the close of the case, to strike out the evidence in regard to the policies of insurance on personal property. There was no competent evidence that such property was insured for more than its value. The jury, however, were suffered to consider the proofs of loss of a portion of the insured property as an evidence of an overinsurance on the whole, and therefore to find a motive on the part of the defendant to burn his buildings. On the evidence in the case the jury should not have been allowed to consider the question of the overvaluation of the personal property.

I have also reached the conclusion with some hesitation, after a careful consideration of the case and examination of the evidence, that such evidence was not sufficient to show the defendant's responsibility for the fire in question. There is no evidence to show that the defendant personally made any preparations for the fire. The testimony does not show any connection whatever between him and the unknown incendiary. While it is impossible to read the testimony without having some suspicion of the defendant, I think the evidence was not sufficient to convict. In examining this, as in all criminal cases, it is desirable to constantly bear in mind the presumption of innocence which always exists in favor of a person charged with a crime,—a presumption sometimes lost sight of in this class of cases. It is now provided by statute that:

"A defendant in a criminal action is presumed innocent until the contrary be proved; and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal." Code Crim. Proc. § 389.

This presumption is strengthened in this case by the testimony as to the previous good character of the defendant given by a large number of prominent citizens of the city and county where he had lived, which was uncontradicted by any evidence produced by the people. In a doubtful case, such evidence is entitled to great weight. Remsen v. People, 43 N. Y. 6; People v. Sweeney, 133 N. Y. 609, 30 N. E. 1005; Stover v. People, 56 N. Y. 315.

This presumption is further strengthened by the fact that the evidence offered by the people to show a motive on the part of the defendant to burn his property was, to say the least, weak and unsatisfactory. As we have seen, the people failed to show an overinsurance on the personal property. There was evidence to the effect

that the buildings were insured $1,400 beyond their value. But it appears that such insurance was in pursuance of a contract made nearly four years before the fire, between the owner of the property, Maxwell, and defendant, and was payable to Maxwell. There is nothing in the case to show that the act of Maxwell and defendant in fixing the insurance at $5,000 was not an honest overvaluation of the property,—nothing to show that those parties intended to defraud the insurance companies who issued the policies on the buildings by an overinsurance. We may take notice of the fact that an honest overvaluation of one's property is common. To justify a finding that the overinsurance of the buildings constituted a motive on the part of the defendant to burn them, it should have been shown that he believed or knew that they were overinsured. Under the evidence in this case, there was no presumption to that effect. The defendant did not erect the buildings, and was not shown to have any knowledge as to their value. The amount of the insurance was determined four years before, by the contract with Maxwell, the owner. The presumption should be entertained that Maxwell and he insured the property for what they deemed its fair value. I think, also, that the defendant should be presumed to have known that, under the law and his insurance contract, he could only recover the actual value of the building, and that such value, the building being a well-known structure in one of the public streets of the city of Kingston, was easily ascertainable by insurers.

Starting, then, in the examination of this case, with a presumption of innocence existing in favor of the prisoner, strengthened in the case by the overwhelming testimony as to his previous good character, and the absence of any satisfactory evidence of a sufficient motive on his part to burn his property, and there being no direct evidence whatever to connect him with the fire, do the circumstances and admissions proved on the trial so point to his guilt as to justify a verdict of the jury? It is a well-settled doctrine that, in determining a question of fact on a criminal trial from circumstantial evidence, the facts proved must not only be all consistent with and point to the guilt of the prisoner, but must be inconsistent with his innocence. People v. Bennett, 49 N. Y. 137. As said by Denio, J., in Shepherd v. People, 19 N. Y. 537–545:

"In such cases the circumstances themselves must be satisfactorily established, and they must be of such a character as, if true, to exclude to a moral certainty every other hypothesis but that of the guilt of the accused."

See, also, Com. v. Webster, 5 Cush. 295, 296; Miles v. U. S., 103 U. S. 304.

There are certain circumstances appearing in this case to which our attention has been called. The defendant's wife was absent in Brooklyn at the time of the fire. He had refused to receive a lodger a few days before. He had obtained some straw, on two occasions, at some period before the 3d of February. On the night of the fire he had friends with him in his own house until half-past 10 o'clock, and then left the house with them, going to the hotel of one Lenehan, where he remained until the time of the fire. It might be claimed, from

these circumstances, that the prisoner was making preparations for the fire, and that, on the very night of the occurrence, he surrounded himself with friends, so as to be able to show that he did not set fire to his building, and also that he was absent at the time that the offense was committed. But the circumstances above adverted to are not inconsistent with the innocence of the defendant. On this criminal trial, under principles above adverted to, we have no right to suspect him because his wife at the time was on a visit to Brooklyn. It was not shown that his reason for not receiving a lodger a few days before the fire was not a good one, or that he did not require the straw for the purpose stated by him; nor is it any just ground for suspicion that friends called upon the prisoner on the night of the fire and remained with him until half-past ten, or that he, being alone in the house, should afterwards go to the hotel of Lenehan, and, meeting an old friend there, remain until the time of the fire. "Where different inferences may be drawn from the same state of circumstances, it is the duty of the court to presume in favor of innocence rather than of intentional and guilty misconduct." Guidet v. Railroad Co., 9 N. Y. St. Rep. 26; Id., 120 N. Y. 649, 24 N. E. 1102.

It has been suggested that it is to be inferred, from the evidence, that the unknown party who made the preparations for the fire broke through the partition between the premises occupied by Burns and defendant after the latter left the premises at half-past 10 o'clock on the night of February 2d, and then made the extensive preparations for the fire that were discovered the next morning, and that such unknown party evidently reckoned on the defendant's absence, which he could not have done without connivance with him. But the unknown party or parties could probably have made the preparations for the fire which were found the next morning in a very brief period. He or they may have had some person outside watching for the return of the prisoner. What more natural, if Burns desired to burn his building, than that he should break into the adjoining house, and set fire to it, and avert suspicion from himself? Inferences should not be drawn against the defendant, from the facts above mentioned, under the well-settled principles to which I have called attention. I therefore conclude that no case was made against the defendant, unless it was established by his own statements and admissions.

These statements were made to the witnesses Heppner, Cunningham, Van Tassell, and the chief of police. The statements or admissions made to the last three are not of sufficient importance to require consideration. As to the conversation of the prisoner with Heppner, it should be remembered that it took place at the time of the fire, when both parties were necessarily excited, and amid great confusion. Such evidence has always been deemed weak and inconclusive. Again, Heppner's statement of the transaction on his direct and on his cross-examination was contradictory, unsatisfactory, and not probable. When the defendant came up to the building, Heppner was inside, with two other men. Other parties had been inside before. Firemen were at work on the building, and it was impossible to prevent the firemen and the public, under the circum-

stances, from having free access to the building. As the defendant came up, he saw that others besides Heppner were inside. It is difficult, under the circumstances, to see what object he had in pulling Heppner out of the building, as at the time others were there, and he must have known that the firemen and public would necessarily have free access to the same. Assuming, however, that defendant did pull Heppner out of the building, and afterwards asked him if he (Heppner) had spoken of that fact, and, on Heppner's saying "No," remarked that he was glad, because that would make him guilty, meaning it would make him appear guilty; that was very far from an admission by the defendant of guilt. It was merely a statement that an act of his would make him appear guilty. Under the circumstances, the testimony of Heppner as to the admission of the defendant is weak and inconclusive evidence.

Without Heppner's testimony, no case was made against the defendant; and I think his evidence was not sufficient to overcome the presumption of innocence, strengthened, in this case, by the evidence of good character, and in the absence of any satisfactory proof of an adequate motive. There are grounds of suspicion against the defendant, but I think the evidence did not warrant a conviction. It was not "of a conclusive nature, leading on the whole to a satisfactory conclusion, and producing in effect a reasonable and moral certainty that the accused committed the offense charged."

The judgment should be reversed, and a new trial granted.

PARKER, P. J., and MERWIN, J., concur. LANDON and HERRICK, JJ., dissent.