State v. Clinton Brown, Appellant.—No. 40349.—204 S. W. (2d) 729.

Division One, October 13, 1947.

1038

*James Patrick Quinn* for appellant.

*J. E. Taylor*, Attorney General, and *John S. Phillips*, Assistant Attorney General, for respondent.

BRADLEY, C.—Defendant was convicted of murder in the first degree; given life term and appealed.

November 12, 1945, Nick Patito was operating a package liquor store on the southeast corner of 12th and Park (2301 E. 12th), Kansas City. About 9 P. M. that day, in an attempted robbery of his store, Patito was shot and killed. Charles Leroy Crist, Charles Sickler, Dudley Knudsen, and Clinton Brown, appellant here, were charged with the murder. Crist, Sickler and Knudsen were present

and participated in the attempted robbery, but appellant was not present. He was tried on the theory that he and the others had entered into a conspiracy to rob the liquor store. Patito resisted; shot Knudsen who fell a short distance south of the store; wounded Sickler, but he escaped from the scene. Crist was not wounded. All were arrested that night; Knudsen where he fell; Sickler in a hospital in Kansas City, Kansas; Crist at the V Bar, 12th and Holmes, Kansas City, the place from which the four started out earlier in the evening, and appellant was arrested at an apartment in Kansas City. The V Bar is some distance west of the Patito liquor store.

Defendant assigns error on the sufficiency of the evidence, and on instructions 2, 3, and 4.

Appellant was a cab driver for the American Cab Company, Kansas City, but had not been working for the two weeks prior to the killing. For some hour or so prior to 7:30 or 8 P. M. on the day of the attempted robbery and killing, defendant and the other three mentioned, and Helen Jennings, were at the V Bar. We refer to the other three as men. Their ages do not appear in the record, but it is suggested that they were boys or young men. Appellant was 34 years old. According to Helen Jennings, who was a state witness, she and Knudsen arrived together at the V Bar before the other three came in. All occupied the same booth and had some drinks. Helen did not remember what they talked about. The four men and Helen, according to Helen, left the V Bar about 7:30 or 8 P. M. in Crist's convertible coupe, Crist driving. Helen got out at her home about a half block from the V Bar, because, according to her evidence, her friend Knudsen said that they were going "to get Charles Sickler's girl friend", Kay Spangler, who lived "on Independence Avenue and Woodland", and that Crist said "there wouldn't be enough room if they brought her (Kay) back in the car."

Appellant admits being with the other three at the V Bar in the evening of November 12th, and that he and they left the V Bar in Crist's car; but he says that he was driving and not Crist, and he says that Helen Jennings was not with them in the V Bar and that she did not enter the car with them. He says that he borrowed Crist's car to make a look for his wife, who had been away and who had returned—so he had heard. The inference is that he and his wife were separated. He says that he drove the car (east) from the V Bar to 12th and Brooklyn (one block west of the Patito liquor store); that Crist told him that if he would take him to 12th and Brooklyn "I could have the car"; that on the way "they told me they intended to hold up somebody to make some money"; that thereupon he told them that he didn't want anything to do with any holdups and that he would not, and something to the effect that he had already been too frequent a "loser" to take any more chances. He said that Crist, Sickler, and Knudsen got out of the car at 12th and Brooklyn,

and that he drove the car back to town; visited four places (naming them) looking for his wife, but did not find her.

Appellant further testified that about 10 or 10:30, after he had visited these places looking for his wife, the car "started spitting like it was out of gas", and that he parked it on 11th, just east of Washington, and left it; then went to 12th and Holmes (V Bar), then went home, Bliss Apartments (1001 E. 11th), and went to bed in the room occupied by John Spurback and wife. Spurback was also a cab driver for the American Cab Company. Appellant and his wife, prior to her going away, had a room at the Bliss Apartments, and defendant says that he gave up this room about a week prior to November 12th. Appellant says that he called Spurback, before he parked the car; told him that he would be there (at the apartment) and for him to leave the door unlocked. Appellant was ▮▮▮ arrested in Spurback's room about 12 o'clock that night.

Otis Green operated a filling station at the southwest corner of 12th and Park, across the street west from the Patito liquor store. Green testified that shortly before the attempted robbery a coupe with three men in it passed through his driveway "and headed back (west) up 12th street" towards 12th and Brooklyn (one block west of the liquor store and the place where appellant says the three got out of the car some hour or more earlier). Green said that "shortly after" the coupe passed through his driveway three men, on foot, came by his place and entered the liquor store and that soon thereafter he heard the shooting and ran out. He saw "three boys" fall "on top of each other" in getting out of the liquor store; one (Crist) got up and ran "across the street on 12th street; two (Sickler and Knudsen) ran "into the alley" just south of the liquor store.

Appellant was arrested by Jack Brice, deputy sheriff, and Al Phillips, police chief of Independence, about midnight, as stated, on November 12th. Brice had known appellant for several years. Crist had been arrested by Brice some hour or so before, and had a conversation with Brice. Soon thereafter Brice called the Spurback apartment and then went there and arrested appellant. To Brice, appellant admitted that he knew Crist, Sickler and Knudsen, but denied that he had been with them on that night, and denied that he had the Crist car. A written statement of appellant was given to policeman Garrett on November 13th. In the statement appellant gave the facts in the main, about like he testified, except that in the statement he said that when he abandoned the Crist car he walked east on 11th street to a parking lot "just east of the Cathedral where I threw away the keys to Crist's car." But when arrested he had a bunch of keys, one of which fitted the ignition lock of the Crist car and another fitted the door to Crist's room. Appellant said that he did not remember telling Garrett that he threw away the Crist keys, but Garrett said he did so tell him. Appellant had about $25 in his

pocket when he abandoned the Crist car, but did not try to buy gas. He denied having any part in the attempted robbery and killing; denied entering into any agreement or conspiracy to rob the Patito liquor store or any other place.

Appellant was first charged with murder only, but an amended information charged murder and also charged under the habitual criminal act. The amended information charged and the evidence showed five prior felony convictions (pleas of guilty), four robberies and one larceny from the person—all in Kansas City. It was shown (without objection) on cross examination of appellant that the larceny from the person case was robbery, but the charge was reduced to larceny from the person. And it was shown (without objection) on cross examination of appellant that at the time of the liquor store attempted robbery and killing appellant was under a fugitive warrant for burglary and larceny in Kansas. And it was shown on cross examination of appellant that he had served a term in a Washington, D. C. reformatory for violation of the Dyer Act. And on cross examination (without objection) appellant gave some detail about the prior robberies he had committed.

The principal circumstances relied upon to support the verdict, briefly stated, are these: (1) Appellant was with Crist, Sickler, and Knudsen at the V Bar, as stated above; (2) he drove them in Crist's car from the V Bar to 12th and Brooklyn; (3) on this drive appellant was informed that Crist, Sickler, and Knudsen intended to rob somebody; (4) he abandoned the Crist car on the assumption that it was out of gas; (5) he had money to buy gas, but made no effort to do so; (6) he at first denied being with Crist, Sickler, and Knudsen on that evening, and at first denied driving the Crist car; (7) said he threw the Crist car keys away when he did not; (8) a coupe (not identified as the Crist coupe) with three men in it, shortly before the attempted robbery and killing, passed through Green's filling station driveway; (9) the coupe that passed through the driveway headed back west; (10) 12th and Brooklyn is one block west of the Green filling station ▉ and the Patito liquor store; (11) three men, on foot, very shortly after the coupe passed through the driveway, passed the filling station and went into the liquor store; (12) the inference is reasonable that these three men were Crist, Sickler, and Knudsen.

The State's theory would seem to be that appellant, Crist, Sickler and Knudsen, after getting rid of Helen Jennings, drove around town in Crist's car until shortly before the attempted robbery and killing; that it was the Crist coupe that passed through the filling station driveway, and that if appellant was not then in the car, he took over at 12th and Brooklyn, and was to have the car convenient for a get away after the robbery, but that the shooting upset plans

and that when plans went awry he drove away in the car and abandoned it at the place stated above.

"Conspiracies, like frauds, are usually concocted in secrecy and can seldom be shown by positive and direct testimony, and this makes it peculiarly necessary to permit them to be established by proof of facts and circumstances, more or less cogent, tending to show their existence. A conspiracy, like other facts or crimes, may be established by circumstantial evidence." State v. Casto, 231 Mo. 398, 1. c. 409, 132 S. W. 1115. See also State v. Strait (Mo. Sup.), 279 S. W. 109, 1. c. 113. The Attorney General, in the brief, reminds of the law applicable to conspiracies as stated in the Casto case and also reminds that in testing the sufficiency of the evidence to support the verdict, the facts will be considered in the light most favorable to the verdict. See State v. Ring, 346 Mo. 290, 141 S. W. (2d) 57; State v. Schrum, 347 Mo. 1060, 152 S. W. (2d) 17. It is conceded that there is no support for the verdict except the circumstances stated, and it is conceded that appellant was not actually present at the time of the attempted robbery and killing. Where circumstances are relied on as here, "the circumstances, to warrant conviction, must be· consistent with each other, must tend to prove guilt, and not only must be consistent with the hypothesis of the defendant's ·guilt, but must be inconsistent with every other reasonable hypothesis, including the hypothesis of his innocence." State v.·Nagle, 326 Mo. 661, 32 S. W. (2d) 596, 1. c. 601; State v. Butts (Mo. Sup.), 182 S. W. (2d) 544.

Measured by the rule of circumstantial evidence we do not think that the evidence is sufficient to support the verdict.

The facts in the Nagle case, supra, were similar to the facts here. Nagle and four others were charged with murder committed in a get away after a robbery. In that case it appears that Nagle, on the day of the robbery, had rather close companionship with Messino, one of the robbers; he exchanged automobiles with Messino shortly before and shortly after the robbery; his car was used in the get away; he concealed his car in a stranger's garage after the robbery, and had a key to that garage when arrested. It was pointed out in the Nagle case opinion [32 S. W. (2d) 1. c. 601] that the facts raised a strong suspicion of his participation in the conspiracy to commit the robbery, but that the state failed to show by substantial evidence that Nagle's automobile, with his knowledge and consent, was used in the· robbery. At most there is no more in the present case than a strong suspicion that appellant was a part of the conspiracy to rob, but suspicion, however strong, is not sufficient. State v. Jones, 106 Mo. 302, 1. c. 313, 17 S. W. 366; State v. McMurphy, 324 Mo. 854, 25 S. W. (2d) 79.

It will not be necessary to rule other assignments. There is no suggestion that the state could produce additional evidence more substantial, hence no purpose would be served by remanding this cause.

The judgment should be reversed and appellant discharged, as was done in the Nagle case. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.