STATE of Missouri, Plaintiff-Respondent,

v.

Wilbur Donald TRIPP, Defendant-Appellant.

No. 45666.

Supreme Court of Missouri,
Division No. 1.

June 10, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied July 8, 1957.

628

Shaw & Smith, Clayton, for defendant-appellant.

John M. Dalton, Atty. Gen., and Richard R. Nacy, Jr., Sp. Asst. Atty. Gen., for respondent.

VAN OSDOL, Commissioner.

Defendant has appealed from a judgment and sentence of five years in the penitentiary upon conviction of robbery in the first degree by means of a dangerous and

deadly weapon. Sections 560.120 and 560.135, RSMo 1949, V.A.M.S. The charge by indictment arose out of the robbery of approximately $12,000 from the custodian of money in the receiver's cage at the Hodiamont Avenue shed of the St. Louis Public Service Company in the early morning of April 5, 1954.

The State has the theory that defendant was an accessory before the fact, and that, as such, he was not improperly charged, tried and convicted as a principal. The State's witnesses could not identify either of the two persons who were seen to have actually participated in the consummation of the crime. The evidence introduced by the State was in large part circumstantial, although defendant had made admissions which are considered in tending to show defendant's connection with the crime.

Herein, defendant-appellant initially contends the trial court erred in overruling defendant's motion for a judgment of acquittal. It is defendant's position that the State's evidence failed in tending to establish that defendant, or any other person with whom defendant was acting in concert or conspiracy or as an accessory before the fact, committed the crime as charged. It is argued it is essential to the conviction of one as an accessory before the fact that the fact be established. It is said that, although the State's theory was that defendant and others, including one Buckman, one Burbank, one Weaver, one Rosarno, and one Rosebaugh had planned the crime, none of these was shown to have been actually present as a participant. Additionally, defendant contends that the evidence tending to show his association with Buckman, Burbank, Weaver, Rosarno and Rosebaugh was as consistent with innocence as with guilt. These contentions require an examination of the evidence; and other contentions will be examined in the course of this opinion.

As indicated, there was a robbery at the St. Louis Public Service Company's Hodiamont shed in the early morning of April 5, 1954.

There was evidence introduced tending to show that Company's night dispatcher, Roger Wolken, on duty at the cashier's cage, had custody of Company's money—receipts turned in by operators on Company's lines. At about 2:55, Wolken heard a noise and presently saw that a man had come over the counter near the cashier's cage. The man fired a revolver. The man wore a hat, a nylon stocking mask, a blue topcoat and gloves. He handed Wolken a pillowcase and told him to fill it with money and to carry it "out front." As the man and Wolken moved through the outer office, Wolken saw another man wearing a stocking mask and carrying "what looked like" a sawed-off shotgun. Wolken was told to put the money in an automobile parked in front of the shed. The automobile "looked like a '48 Lincoln, dark blue or black." It had "candy-striped" seat covers. One Meyer, an "extra-board" bus driver in Company's employ, had been asleep on a bench in the outer office awaiting a possible call for service at four. He was awakened by the shot, and saw a man with something over his head and a sawed-off shotgun in his hands. At 3:05 policemen found the bullet (which had been discharged from the revolver) on the floor of the inner office. The bullet was placed in an envelope and forwarded to the laboratories of the St. Louis Police Department.

One Rosebaugh testified that he was the owner of a 1947 black Lincoln sedan with striped seat covers. He was at home in bed between one-thirty and two in the morning of April 5th. He and defendant are friends. Rosebaugh said he "slightly remembered" that defendant came to Rosebaugh's home and "said something about using" Rosebaugh's car. Rosebaugh's Lincoln was then parked in the driveway with the key in the ignition switch. When Rosebaugh got up around seven or seven-thirty that morning the car was not there.

Within two or three days Rosebaugh saw defendant at a tavern on Taylor. Defendant gave Rosebaugh fifty dollars. Later, sometime after April 18th, Rosebaugh saw his Lincoln at the police station. On April 18th, the police had found a 1947 black Lincoln sedan parked in the 5300 block on Vernon Avenue. It was the Rosebaugh Lincoln. There was a stocking lying in the front seat. The stocking (State's Exhibit 17) had been cut off and tied at the top forming a stocking cap.

One Seithel, a police officer, was at his home on Maffitt the evening of April 20th. He received a telephone call, and then went out on the front porch where he found a brown paper bag or package. The package contained a pair of gloves, a greasy rag, a nightgown, a blue topcoat (State's Exhibit 14), a Ranger sawed-off shotgun (State's Exhibit 15), and a Smith & Wesson 32.20 caliber revolver (State's Exhibit 16).

April 21st, one Weaver was arrested at the First National Bank in Wellston. Weaver had a paper bag containing over $900 in currency which he had taken from his safety deposit box at the bank. Sixteen pieces of the currency bore blue-penciled "top count figures" identified by witnesses, Company's teller and clerk, as having been made by them on bundles of currency when these moneys had been "turned in" by operators of vehicles after completing runs on Company's lines.

Defendant was in custody April 26th. He was questioned by officers about the robbery of April 5th. Defendant said he had "furnished" the Ranger shotgun. He had taken it to the home of Burbank in an evening of early April. Burbank, Weaver and Buckman were in the kitchen of the Buckman home at the time. Defendant also said he went to Rosebaugh's home in the early morning of April 5th, before the robbery. Rosebaugh was in bed. Defendant drove the Rosebaugh Lincoln to Cote Brilliante and parked it in the 5800 block. He then went to Buckman's home and told Burbank and Weaver where the car was. Defendant said that he was in the kitchen of Buckman's home the evening before the robbery. Weaver, Burbank and Rosarno were present. There they discussed "this holdup." Burbank had asked him to furnish an automobile. Defendant stated to other officers that he had "furnished the shotgun and the automobile." Defendant also stated Rosebaugh had "gotten $50" for the use of the Lincoln, and Burbank had given him (defendant) $300 "for obtaining the shotgun and the car for that robbery." He said the robbery was planned several days before at an inn owned or operated by Rosarno.

The witnesses for the State, Wolken and Meyer, testified that the weapons, State's Exhibits 15 and 16, were similar in appearance to those in the hands of the robbers at the Hodiamont shed. The blue topcoat (State's Exhibit 14) was said by the witness Wolken to be similar to that worn by the robber who fired the revolving pistol. Wolken testified the Lincoln at the Hodiamont shed, April 5th, "looked similar to" the Rosebaugh car. The State's Exhibit 17 was similar to the stocking masks worn by the robbers in the actual perpetration of the crime. An expert testified that technical tests of the bullet (found at 3:05 after the robbery on the floor of the inner office at the Hodiamont shed) demonstrated the bullet had been discharged from the Smith & Wesson revolver found by the officer Seithel in the package on the front porch of the Seithel home the evening of April 20th.

Considering the evidence which we have detailed supra, we could have little doubt but that the evidence was substantial in tending to show defendant was an accessory before the fact to the robbery. The State's evidence of defendant's part in the crime was not circumstantial entirely. Defendant's statements in the form of admissions, considered in connection with the shown circumstances of the robbery, were sufficient and substantial in implicating him

as an accessory before the fact, and supported the charge and conviction of defendant as a principal.

■ Section 556.170 RSMo 1949, V.A. M.S., provides that every person who shall be a principal in the second degree in the commission of any felony, or who shall be an accessory to any murder or other felony before the fact, shall, upon conviction, be adjudged guilty of the offense in the same degree, and may be charged, tried, convicted and punished in the same manner, as the principal in the first degree. The Section virtually abrogated the distinction between principals and accessories before the fact, except in name. State v. Fredericks, 85 Mo. 145. See also State v. Wood, Mo.Sup., 285 S.W. 737; State v. Herman, Mo.Sup., 280 S.W.2d 44. In our case we think there can be no doubt that the State's evidence was sufficient in tending to show the fact of the robbery, April 5, 1954, at the Hodiamont shed of the St. Louis Public Service Company. And we have no doubt of the sufficiency of the evidence in tending to show defendant's connection with the crime, in conspiring and counseling, and in procuring the motor vehicle and shotgun for use in the commission thereof. Here we see the proof of the fact of the actual robbery differentiates the instant case from State v. Lourie, Mo.Sup., 12 S.W.2d 43, cited by defendant-appellant, wherein the charge was attempt to murder and there was no proof of an overt act moving directly in consummation of the homicide. Other cases cited by defendant-appellant are readily distinguishable. In State v. Neagle, 326 Mo. 661, 32 S.W.2d 596, defendant's confession was held to have been the result of fear and intimidation and should have been excluded. The evidence, exclusive of the confession, was insufficient in tending to show the use of defendant's automobile in the perpetration of the crime was with his knowledge and consent. In State v. Richards, 334 Mo. 485, 67 S.W.2d 58, the principal issue was the identity of defendant

as an actual participant, or principal. The admission of the evidence of property unlawfully taken from defendant's home was erroneous; and the articles, taken from the Wright home, were in no way shown to have been connected with defendant. In State v. Schrum, 347 Mo. 1060, 152 S.W.2d 17, defendant admitted his ownership of an automobile found abandoned two miles from the scene of the larceny. The fact of his ownership, in itself, was insufficient in supporting the inference of guilt. In State v. Brown, 356 Mo. 1037, 204 S.W.2d 729, no shown circumstance was inconsistent with innocence.

■ In the instant case, the evidence, including defendant's statements, was substantial in tending to show that defendant was conspiring and counseling in planning the crime, as well as procuring articles to be used in the perpetration thereof. A jury reasonably could find that, in furthering the plan and design for the robbery, defendant undertook to and did supply the Lincoln sedan and the sawed-off shotgun which a jury could reasonably infer were used by those principals who actually perpetrated the crime of which defendant had his part in planning; and that those with whom defendant conspired or some of them, as principals, committed the robbery or counseled, or aided and abetted those who did act in the actual perpetration of the crime as planned, but whose identity the State apparently was unable to show. Now we do not wish to rule the State's case must fail because it may be that the persons who actually committed the crime have not been arrested or tried or punished. It is provided that an accessory, before or after the fact, may be indicted, tried and punished, notwithstanding the principal felon may not have been arrested, tried and convicted. Section 556.190 RSMo 1949, V.A.M.S. Neither do we wish to rule that the State's case must fail because of the fact that the State was unable to introduce evidence identifying the persons who actually committed the crime, inasmuch as the evidence

introduced was substantial in tending to prove defendant's connection with the criminal act.

In People v. Kelly, 11 App.Div. 495, 42 N.Y.S. 756 (appeal dismissed, 153 N.Y. 651, 47 N.E. 1110), as in our case, the State did not contend defendant personally committed the crime of which he was charged as principal. In the Kelly case the averred crime was arson. Evidently the fire was the work of an unknown incendiary. The evidence was held insufficient in establishing defendant's connection with the crime; however, it was said that under the stated provision of the New York Penal Code a defendant could be convicted of the offense as charged as a principal. This, although he did not directly cause the fire, and the person who did was not identified. The fire having been started by an unknown incendiary, if the evidence was sufficient to establish defendant's connection with the act, or to show that he aided or abetted in the commission of the offense, or directly or indirectly counseled, induced or procured the criminal act by the unknown party, he could be held as principal. See also State v. Crofford, 133 Iowa 478, 110 N.W. 921; Commonwealth v. Adams, 127 Mass. 15; Vol. 1, Wharton's Criminal Law, 12th Ed., § 277, pp. 364–366.

We hold the trial court did not err in overruling defendant's motion for a judgment of acquittal.

■ The contention of defendant that the trial court erred in admitting State's Exhibits 14 to 17, inclusive, is ruled adversely to defendant. The contention is grounded on the argument that the exhibits were not in any way identified as belonging to or having any connection with the defendant. It is here sufficient to point out again that defendant admitted he had furnished the Ranger shotgun for "this holdup"; and admitted that he had procured the Rosebaugh automobile for use in the consummation of the crime. It is true that no direct connection was shown between defendant and State's Exhibits 14, 16 and 17; however, State's Exhibit 17, the nylon stocking mask, apparently was found in the front seat of the Rosebaugh Lincoln, which automobile, the evidence tended to show, was procured by defendant; and State's Exhibit 14, the topcoat, and State's Exhibit 16, the revolver, were contained in the package found on the Seithel porch which package also contained Exhibit 15, the sawed-off shotgun—the weapon, as stated, defendant admitted had been furnished by him for use in the robbery. We think the exhibits were correctly admitted into evidence. See and compare State v. Johnson, Mo.Sup., 286 S.W. 2d 787, at page 792.

■ The trial court did not err in admitting evidence of Weaver's possession of money, upon arrest, which had been marked by Company's receiving teller and clerk. It is contended that such evidence was inadmissible under the rule stated as follows, "Generally it is said that after the common enterprise is ended, whether by accomplishment or abandonment, no one of the conspirators or joint actors is permitted by any subsequent act or declaration of his own to affect the others." State v. Chernick, Mo.Sup., 280 S.W.2d 56, at pages 59–60; Vol. 2, Wharton's Criminal Evidence, 12th Ed., § 429, p. 201. The markings on the currency possessed by Weaver, who reasonably could be found to have conspired with defendant, indicated the moneys were the proceeds of the robbery. And, while the general rule is as above stated, yet the fact may always be shown that any one of co-conspirators was in possession of the "fruits of the crime," or the weapon or instrument with which the crime was committed. State v. Richetti, 342 Mo. 1015, 119 S.W.2d 330, at page 340; State v. Costello, Mo.Sup., 252 S.W. 727; Vol. 2, Wharton's Criminal Evidence, 12th Ed., supra; Underhill's Criminal Evidence, 4th Ed., § 779, pp. 1418–1421.

■ Before the trial, defendant was imprisoned in the Federal penitentiary at Terre Haute. At the trial, defendant proffered evidence that he had procured a writ of habeas corpus *ad prosequendum*; had paid his expenses to St. Louis for the trial of this case; and had insisted on an early trial. (The transcript upon appeal contains no evidence of flight.) The evidence, proffered by defendant, is said by him to have been admissible as "tending to show a consciousness of innocence on the part of the Defendant." The proffer was of evidence of acts and declarations self-serving in character, and the trial court's exclusion of such evidence was not error. Linnehan v. State, 120 Ala. 293, 25 So. 6 (wherein the evidence excluded was the statement of defendant that he had done nothing wrong and wanted to come to court and stand trial); Underhill's Criminal Evidence, 4th Ed., § 255, pp. 480–483; 31 C.J.S. Evidence § 216, pp. 948–958.

■ In making the opening statement for the State, the Circuit Attorney had advised the jury that the State expected to show by the witness Rosebaugh that defendant had appeared at the Rosebaugh home; had asked Rosebaugh for the use of his Lincoln; and had further said to Rosebaugh "if your car isn't back at 3:00 o'clock, report it stolen." The State failed to prove by Rosebaugh that defendant had made the statement as quoted; although, as we have seen supra, the State did show by the witness Rosebaugh that defendant had asked him for the use of the Lincoln. Defendant contends error of the trial court in refusing to declare a mistrial. But, having examined the transcript upon appeal, we readily infer Rosebaugh was a reluctant witness. And there is no indication the Circuit Attorney, when making the opening statement, was acting in bad faith and did not have reasonable grounds for supposing he would be able to show the conversation as he stated to the jury. We have the opinion the contention should be ruled adversely to defendant. State v. Rowe, 324 Mo. 863, 24 S.W.2d 1032.

The indictment was sufficient in form and substance. The verdict was sufficient in form and was responsive. Allocution was afforded and judgment and sentence duly entered and pronounced.

The judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.