THE STATE v. DEWEY ASKEW, Appellant.—56 S. W. (2d) 52.

Division Two, December 14, 1932.

*May & May* for appellant.

*Stratton Shartel*, Attorney-General, and *Walter E. Sloat*, Assistant Attorney-General, for respondent.

FITZSIMMONS, C.—Appellant, tried in the Circuit Court of Pike County, was found guilty of transporting moonshine whiskey. The jury assessed his punishment at three months imprisonment in the county jail and a fine of $500. His motion for a new trial having been overruled and sentence imposed, he appealed to this court. The information charged appellant and one Henry Hull jointly. But appellant was granted a severance.

■ I. A preliminary and basic question is whether the trial court rightly overruled appellant's motion to suppress as evidence certain moonshine whiskey taken from appellant's automobile. The motion to suppress the evidence was submitted to the court upon the testimony of Harve Daniel, a deputy sheriff of Pike County and constable of Cuivre township and of Wm. F. Goodman, prosecuting attorney of Pike County, both of whom were called by defendant. Immediately after the submission of the motion, the court at the request of the State over the objection of appellant, reopened the hearing in order that Daniel might be recalled as a State witness. In so doing the court acted within its sound discretion. The testimony given in the first part of the hearing was quite insufficient to advise the court fully upon the merits of the motion.

■ ■ The testimony at the two hearings, summarized together, showed that the officers of Pike County had information that appellant was in the habit of transporting moonshine two nights each week, from Hannibal, his home city, to the dwelling house of a certain colored man in Bowling Green, the county seat of Pike County. The prosecuting attorney also had been informed that appellant was to make one of his trips on the morning of May 29, 1931. Deputy Sheriff Daniel, together with a Federal prohibition agent, went on that morning to the neighborhood of the house mentioned and waited. Daniel saw appellant drive his car to a stop in front of the house. Daniel recognized appellant and had a description of the car. Appellant left the car and carried from it into the house a gunny sack. Daniel and the prohibition agent who had been hiding

in a pasture opposite the house, crossed the street, Daniel entering the house and the prohibition agent going to the car.

When Daniel got within the house he saw appellant in the kitchen take a jug from the sack and hand it to the colored man. Appellant was in the act of handing over a second jug when Daniel from another room said that he would take that one. At sight of Daniel appellant fled through the back door. Daniel called to him to stop, but appellant did not obey. Without any pursuit of appellant, Daniel ran out of the front door. When Daniel reached the street he saw appellant still running, but Daniel hastened to the automobile and said to Hull, appellant's codefendant, who was sitting in the rear seat: '' 'If I could not get him I will take you,—I will arrest you,' and then I searched the car.'' The search was made without a warrant. Daniel took appellant's car and its liquor contents and Hull to the courthouse in Bowling Green. The deputy sheriff and the prosecuting attorney then entered an automobile and drove along the highway toward Hannibal in search of appellant. On the way, a man on foot hailed them for a ride. Daniel recognized him as appellant, stopped the car and arrested him. This was about three quarters of an hour after appellant's car had been searched.

At two points in his cross-examination upon his second appearance as a witness on the hearing of the motion to suppress the evidence Daniel gave testimony bearing on the visibility of the contents of the car. The testimony was: ''Q. You testified on direct examination that he (the prohibition agent) went over to the car and found the liquor, searched the car and found it? A. You couldn't help but see it.'' And again: ''You found the liquor in this car while this man Hull was sitting over in the passenger's seat? A. I opened the door and seen it in there.'' The gist of appellant's argument in support of the motion to suppress as evidence the moonshine whiskey found in the car is that Deputy Sheriff Daniel, at the time of the seizure of the evidence, had not arrested appellant and did not have a search warrant, and therefore that he acted in violation of appellant's constitutional rights.

The law is settled that, if an officer has reason to believe that a person is committing a felony in transporting liquor, he has the right to arrest him without a warrant and to search him and the automobile, incident to the arrest. [State v. Harris, 324 Mo. 139, 22 S. W. (2d) 1050.] In the instant case, the officer saw appellant and his codefendant, Hull, riding in the moving car. When appellant left the car and entered the house carrying a sack containing, as was soon afterward discovered, two jugs of moonshine, Hull remained in the back seat where he had been riding and where the remainder of the moonshine was. It is a fair inference that appel-

lant placed the car in charge of Hull at least for the time being, that is, during appellant's stay in the house. When appellant fled from the officer, he in effect abandoned the car to Hull and further left it in his care. And when the officer gave up pursuit of appellant, he arrested Hull, who was still in the car, and in charge of it. And the car was not searched until after Hull was arrested. The arrest of Hull was warranted under the circumstances observed by the officer. While appellant was driving the car during the period of transportation which Daniel observed, the movement of a car in which intoxicating liquor is being conveyed may be controlled by a person who is not driving but is a passenger. In such a case the person so controlling the movement is subject to the charge of unlawful transportation. We are not passing judgment on the guilt or innocence of Hull under the charge which was lodged against him and appellant, and upon which charge appellant was tried and convicted. But we do say that Daniel having arrested Hull while he was in charge of the automobile, Daniel had the lawful right to search and to seize the liquor which he found therein. And the liquor so found was admissible in evidence as well against appellant as against Hull. This assignment therefore is ruled against appellant.

▉ II. Not all the moonshine whiskey which the State offered in evidence was found in appellant's car. Deputy Sheriff Daniel at the trial identified Exhibit One as a glass jug, containing moonshine, which Daniel found in the sack in the house after appellant had fled. Daniel also testified that the first jug, which appellant had handed to the colored man, fell on the floor and broke when Daniel made his presence known. The contents of the broken jug, Daniel testified, was moonshine. Appellant contends that the jug of moonshine which Daniel found in the house was not admissible because the deputy entered a private house without a search warrant and he seized the jug in the sack before he had arrested appellant. To this it may be answered that Article 2, Section 11 of the Missouri Constitution providing that people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures affords no protection from search to a person who is not the owner of or in possession of the premises. [State v. Fenley, 309 Mo. 520, 275 S. W. 36; State v. Pinto, 312 Mo. 99, 279 S. W. 144, 1. c. 147.]

▉ III. Appellant predicates error upon the admission in evidence, at the trial, of a written statement, made by him to the prosecuting attorney, immediately after his arrest. The statement supported the charge of transporting moonshine whiskey, of which,

he admitted, he had twenty-two gallons in his car on the day of his arrest. The objection to the confession that it was not supported by independent evidence of the *corpus delicti* is based on the inadmissibility of the jugs and bottles of moonshine seized in the car and the jug found in the house. But we have held them to be admissible. Therefore this objection falls. The further objection that the prosecuting attorney did not inform appellant that he had the right to consult an attorney before he signed the written statement has been overruled and is without merit. [State v. Robinson, 263 Mo. 318, 172 S. W. 598.]

■ IV. Appellant complains of objectionable arguments to the jury of the prosecuting attorney and of a special prosecutor. The court sustained a general objection to the argument of the prosecuting attorney but overruled a motion of appellant to discharge the jury on account of the argument of the special prosecutor. Prejudicial statements of over-zealous prosecuting officers appear to recur with increasing frequency in the records in appeals in criminal cases. They seem to be most common in cases in which the facts in evidence speak more eloquently than the tongues of the orators. It is regrettable that the speakers seem to set more power upon their eloquence than upon the evidence. Be that as it may, we are of opinion that, in the instant case, the rulings of the trial court were within its sound discretion in these matters. There being no reversible error, the judgment is affirmed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.