STATE of Missouri, Respondent,

v.

Wayman ESTES, Appellant.

No. 44522.

Supreme Court of Missouri.

Division No. 2.

July 11, 1955.

John M. Bragg, Alva, for appellant.

John M. Dalton, Atty. Gen., David Donnelly, Spec. Asst. Atty. Gen., for plaintiff-respondent.

BARRETT, Commissioner.

The appellant, Wayman Estes, upon a conviction of burglary and larceny, has been sentenced to four years' imprisonment in the intermediate reformatory for young men.

The facts were that in the early morning hours of February 26, 1954, locally popular "Chunk's Tavern", on the outskirts of Gainesville, was entered. Whoever entered the tavern stole two cartons of cigarettes, four cases of beer, and twenty dollars in nickels, dimes, quarters, and half dollars. About ten o'clock that night in St. Louis police officers were called to a bowling alley and restaurant on Eastern Avenue. A waitress in the establishment complained that "these three men were causing a disturbance and one of them had threatened to shoot up the place." The "three men" turned out to be Gilbert Davidson, Doyle Graham, and Wayman Estes, all young men from the Souder community in Ozark County. The police officers were unable to understand just what the three boys were doing in St. Louis and when Patrolman Boubek observed "a bulge in the front of Gilbert Davidson's shirt," which turned out to be a loaded .45-caliber revolver, the police arrested all three boys and took them to the twelfth district police station. At the

station the police learned that they had driven to St. Louis that day in Graham's Pontiac automobile. Two policemen accompanied Wayman and he pointed out the car to them on a lot adjoining the bowling alley. Estes drove the car to the police station and on the following morning, the 27th, the automobile was searched and some cans of beer found as well as some empty beer cartons and empty beer cans. The police called the sheriff of Ozark County and, for the first time, learned of the burglary of "Chunk's Tavern." On the evening of the 27th Wayman related the details of the burglary to Lieutenant Mateker. "He said that about noon on the 25th of February he was in a tavern operated by Chunk (Vester G.) Woods on Highway 80 in Gainesville, Missouri. He said he walked to the rear door of this establishment and he loosened the wire that held the lock to this door. He returned that night at about midnight, driving there in his father's pickup truck. He parked the truck about a half mile away from the tavern, went to the door which he had rendered insecure earlier that day by removing the wire and he entered that door, walked behind the bar and removed about $20 in change from the cash register and took 4 cases of beer; 2 cases of Schlitz and 2 cases of Budweiser. He said he hid two cases of the beer in a creek near his home and brought the other two cases with him to St. Louis. He and his friends consumed part of it on the way." Wayman repeated his admission to other officers and if the admissions were properly received in evidence, there was substantial evidence of Wayman's guilt and proof of every element of the offense.

In his motion for a new trial the only reasons or grounds assigned are: "(a) The Court erred in overruling defendant's Motion to Suppress evidence: (b) The Court erred in refusing and failing to require the Prosecuting Attorney to show that the oral statement of the defendant made while in custody of the Police Officers of Saint Louis and testified to by said Police Officers was made voluntar[il]y and without intimidation and coercion, which was requested by the defendant in paragraph seven of his Motion to Suppress evidence: (c) The Court erred in overruling paragraph seven of defendant's Motion to Suppress evidence."

The appellant filed a proper motion to suppress evidence, Supreme Court Rule 33.03, 42 V.A.M.S., except for paragraph seven the motion was directed to the search and seizure of the automobile and its contents, the beer and beer cans and five or six dollars in small change. The court conducted a preliminary hearing on the motion and in support of his claim the appellant examined six of the police officers but all his questions were directed to the search of the automobile, there were no questions directed to the voluntariness of his admissions.

■ We lay aside the obvious question suggested by the fact that the automobile belonged to Graham and the fact that there is no evidence that it was in Wayman's possession or control. 79 C.J.S., Searches and Seizures, § 52, pp. 811, 814; State v. Askew, 331 Mo. 684, 56 S.W.2d 52; State v. Fenley, 309 Mo. 520, 275 S.W. 36. His motion for a new trial mentions the motion to suppress evidence, State v. O'Brien, Mo., 252 S.W.2d 357; State v. Medley, 360 Mo. 1032, 232 S.W.2d 519, but the assignment that the court erred in overruling "defendant's motion to suppress evidence" is so lacking "in detail and with particularity" and "specific grounds or causes therefor", Section 547.030 RSMo 1949, V.A.M.S.; Supreme Court Rules 27.19, 27.20, that it does not preserve any constitutional question for review by this court. State v. Powers, 350 Mo. 942, 943, 169 S.W.2d 377, 378; State v. Thompson, 338 Mo. 897, 901, 92 S.W.2d 892, 893; State v. Tebbe, Mo. App., 249 S.W.2d 172. In this connection, none of the physical evidence was offered in evidence and when defense counsel objected to an officer's testifying to the objects found in the car the court sustained the objection and there was no request for other or further action on the part of the court. State v. Preston, Mo., 184 S.W.2d

1015. Furthermore, upon cross-examination of this same witness defense counsel examined the officer fully as to the circumstances of the search and what he found in the automobile. State v. Hepperman, 349 Mo. 681, 697, 162 S.W.2d 878, 886–887.

■■■ As stated, upon the hearing of the motion to suppress there was no evidence concerning the appellant's admissions or confessions of guilt, the subject was not mentioned and consequently, at that stage of the case, there was no evidence whatever that his admissions or confessions had been coerced and were therefore involuntary. Upon the trial of the case, when Lieutenant Mateker testified to Wayman's admissions his counsel made this objection: "Comes the defendant, Wayman Estes, and objects to any testimony that this witness might testify to concerning any statement that Wayman Estes made either on the 26th or the 27th for the reason that the defendant heretofore filed a motion to suppress certain oral statements (paragraph seven of the motion), and for the reason the Court did not inquire into the fact of whether or not the statement was made voluntarily or under duress or coercion." Thereafter as each officer testified to the admissions this or a similar objection was made. While this may have been a unique way of presenting the question, it was not the proper manner of doing so, for the unsupported motion did not prove itself and there was no duty upon the court to investigate the subject at that point, the defendant having failed to do so. State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88; State v. Menz, 341 Mo. 74, 106 S.W.2d 440.

■ When the defendant testified in his own defense he said that one of the officers "said if I didn't take 'em and show 'em where that automobile was, they'd bust my head in so many pieces that they never would be able to put it back together." He said, "on Saturday evenin' there was one of these guys hit me across the back twice with somethin' like a blackjack or something." To his counsel's question, "Were you whipped any time after that or struck

by anyone?" he answered, "Well, nothin' only they just slapped me around and kicked me and jerked me up out of the chair by the hair." When accused of burglarizing Chunk's Tavern he first denied it, the thing that caused him to make the statement, particularly the admission to the lieutenant, was the fact, as he stated it, "Well, he said if I didn't tell 'em about burglarizing Chunk Wood's beer tavern, that he was goin' to take me down in the basement and put me on some stretchers and really give me a workin' over. * * * Q. Did he make that threat any more? A. Yes, and they slapped me around and so, finally, they asked me—two of 'em got hold of each of my arms and asked me if I was goin' to tell 'em or was they goin' to take me to the basement, and so I told 'em." After this testimony by the appellant the seven police officers from St. Louis and the Sheriff of Ozark County all testified in rebuttal that there were no threats, force, or deception, and, in effect, that Wayman's admissions or confessions were voluntary. Among other instructions, the court gave the jury an instruction upon the voluntariness of Wayman's statements or admissions and in these circumstances a jury of his peers has resolved the question conclusively. State v. Hayes, Mo., 247 S.W. 165; State v. Holliday, 353 Mo. 397, 182 S.W.2d 553; State v. Seward, Mo., 247 S.W. 150.

Questions not required to be presented and preserved in a motion for a new trial have been examined and the transcript shows compliance with respect to all matters necessary to be considered by this court upon the record before it. Section 547.270 RSMo 1949, V.A.M.S.; Supreme Court Rule 28.02. The information appropriately charges the appellant with the offense of burglary in the second degree, Section 560.070 RSMo 1949, V.A.M.S., and a larceny in committing the burglary, Section 560.110 RSMo 1949, V.A.M.S., the verdict is in proper form and responsive to the information, Section 560.095 RSMo 1949, V.A.M.S., there was allocution and the sentence and judgment are responsive to the verdict, Sections 546.550, 546.560,

546.570 RSMo 1949, V.A.M.S. Since no error is found or demonstrated upon the transcript, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.