STATE of Missouri, Respondent,

v.

Bill WORLEY, Appellant.

No. 49000.

Supreme Court of Missouri,

Division No. 1.

Feb. 12, 1962.

January 17, 1961, and money, cigarettes and other merchandise of the total estimated value of $377.00 were stolen from the premises. On the same night the Hathaway Grocery, at Spickard, Grundy County, was also burglarized. Defendant Bill Worley and one Richard Earl Jones were arrested and charged with the commission of these offenses. By an amended information thereafter filed, defendant was separately charged with the offenses of burglary in the second degree of the Sauer Tavern with intent to steal, as that offense is defined in Section 560.070 RSMo 1959, V.A.M.S. (to which revision all statutory references herein are made), and with stealing from said tavern the hereinafter more particularly described personal property, as that offense is defined in §§ 560.156 and 560.110. The amended information also invoked the provisions of the habitual criminal act, § 556.280, by alleging a prior conviction of defendant of burglary.

The jury found defendant guilty as charged. The trial judge, after hearing evidence out of the presence of the jury, also found that defendant had been convicted of the prior felony as alleged in the amended information. His punishment was assessed at imprisonment for a term of ten years on the charge of burglary and a term of five years for the crime of stealing. The court further ordered, however, that said sentences run concurrently and not consecutively. Defendant has appealed.

Although represented by court-appointed counsel at the trial, the only brief filed in defendant's behalf in this court is a document entitled "Appellant's Brief, Bill Worley, through his next friend, a lay man unlearned in Law." That document asserts the insufficiency of the evidence to support the verdict and thereafter pursues a course of argument clearly beyond and independent of the grounds assigned in the motion for new trial. If that document were considered in the light of S.Ct. Rule 28.02, V.A.M.R., all assignments in the motion for new trial, except the contention also made therein that the evidence was insufficient to support

Bill Worley, through his next friend, a lay man unlearned in Law.

Thomas F. Eagleton, Atty. Gen., Lynn B. Nelson, Sp. Asst. Atty. Gen., for respondent.

HOLLINGSWORTH, Judge.

The tavern of Mr. and Mrs. Henry Sauer, located in Laredo, Grundy County, Missouri, was burglarized on the night of

the verdict, would be deemed waived or abandoned. However, we will also review the other assignments in the motion for new trial and portions of the record, as required by Rules 27.20 and 28.02.

The evidence to connect defendant with commission of these crimes was entirely circumstantial. It warrants a finding of the following facts: The tavern, which was owned and operated by Mr. and Mrs. Sauer, also included a restaurant and laundry. It closed and its doors and windows were locked about midnight on the night of January 17. The fact that it had been burglarized was discovered about 3:00 to 3:30 o'clock on the morning of the 18th. State Patrolman Julian LePage had been called that morning by the Sheriff of Grundy County to investigate the burglary of the Hathaway Grocery at Spickard. While at Spickard, he learned of the burglary of the Sauer Tavern at Laredo. Investigation made at the Sauer Tavern revealed that the front door and two inner doors had been pried open by a tool with a chisel-type end. Further investigation of the premises revealed that about 80 cartons of Pall Mall cigarettes purchased by Mr. and Mrs. Sauer from Bond's Wholesale House in Trenton had been stolen; the cash register had been opened and approximately $50.00 stolen from it; a coin-changing machine had been pried from its fastening on the blue plaster wall and had been forcibly opened; the doors of a pinball machine and a music box had also been forcibly opened and coins in each of these containers had been stolen. These articles, together with a specimen of the blue plaster wall from which the coin-changing machine had been removed (and wood from the doorsills of the Hathaway Grocery at Spickard), were delivered to Kenneth Miller, a State Highway Patrolman assigned to the laboratory of that institution, for microscopic examination.

Richard Jones lived in Lebanon; defendant lived near Lebanon. They are cousins. Max Hayden and his wife, Eula, are the uncle and aunt of both defendant and Richard Jones. The Haydens came to live in Laredo about two years prior to the burglary. Richard Jones worked at various intervals of time for Max Hayden and they, Richard and Max, frequented the Sauer Tavern. Defendant was also seen on occasions with Richard Jones in and around Laredo and they were together at the Max Hayden home about 8:00 to 9:00 o'clock on the night of the burglary.

On the date of the burglary, the night of January 17, 1961, Norman E. Tinnin, a State Patrolman, was stationed at Lebanon. He knew defendant and Jones and, for about two weeks prior to the burglary, had observed them riding together in a black 1951 4-door Studebaker sedan driven by defendant. On the morning of January 17, Patrolman Tinnin saw this car parked in an alley near the home of Richard Jones' mother in Lebanon. At that time it bore 1960 Johnson County, Kansas, license plates, JO 53 859.

On the night of January 17, between 9:00 and 10:00 o'clock, Gail Tate, manager of the M.F.A. Central Co-operative Store at Laredo, drove his car from Trenton to Laredo. On that trip he saw a 1951 black 4-door Studebaker car "back out" of a gate that entered his property. He followed the car into Laredo, during which time he "jotted down" the license number attached to it, which was the aforesaid Kansas plate JO 53 859. He also saw that there were at least two men riding in the car. He related these facts to Patrolman LePage the following morning after hearing of the aforesaid burglary. About 3:00 o'clock on the morning of January 18, John Creten, who lives at and operates the "Trenton Bowl", saw a 1951 black Studebaker sedan bearing a Johnson County, Kansas, license, drive twice around his premises. Its lights were turned off. At least two men were in it. On the same day, January 18, Patrolman LePage, after talking with Gail Tate, went with Sheriff Mapes to the home of Max Hayden. They there observed in front of the Hayden home a 1949 Plymouth sedan without any license plate on it.

About midnight on January 21, Patrolman Tinnin and other officers saw the 1951 black Studebaker parked at the home of defendant's parents about eight miles from Lebanon. At that time it bore a 1960 Missouri license plate, No. A96–485. Investigation revealed that that plate had been issued to defendant's uncle and aunt, Max and Eula Hayden, of Spickard, Grundy County, for a 1949 Plymouth sedan. Tinnin and other officers thereafter continued their observation of the black Studebaker. On January 23, Tinnin and Lebanon Police Officer Bill Marley went in search of defendant to arrest him. They found the black Studebaker parked at the residence of Richard Jones' mother in Lebanon. There was then no license plate whatever attached to it. In the car they found a combination lug and tire tool, a pinch bar, and a partially consumed carton of Pall Mall cigarettes. These cigarettes bore the same serial number as those purchased by Mr. and Mrs. Sauer from the Bond Wholesale House and stolen from the Sauer Tavern. Defendant was arrested and the Studebaker car and the aforesaid items found therein were seized. The items found in the car were delivered to Patrolman Julian LePage, who, in turn, delivered them to State Patrolman Kenneth Miller for examination and microscopic study at the State Highway Patrol laboratory. Defendant admitted to Patrolman Tinnin (and other officers) that he had been in Grundy County on January 17, 18 and 19, and that the Studebaker car belonged to him. He said he would get a proper license for it. On January 25, defendant, in talking with Patrolman LePage, admitted that he, driving the Studebaker, left Lebanon at approximately noon on January 17, accompanied by Richard Jones; that they arrived at Laredo about dark; but further said that they drank beer at the Sauer Tavern until 9:00 or 10:00 o'clock and then went to the Charley Dye Tavern on Highway 6, west of Trenton; and that they stayed at the Dye Tavern until 11:00 or 11:15 p. m., and then drove to Kansas City. On March 16, 1961, upon being released from jail on bond, defendant obtained from the Automobile Registration Department of Missouri a certificate of title and a "new license" for the 1951 black Studebaker, for which he remitted $1.00 and $20.00, with tax of $1.00, total $22.00. The application made by him recites that he paid $50.00 for the car and that he had purchased it "Jan. 1961" from Paul A. and Edna Freeland, "K.C., Mo."

Microscopic examination of the pinch bar found in defendant's car at the State Highway Patrol laboratory revealed small amounts of blue painted plaster impressed upon its edge. The plaster found on that bar had paint on it of the color and composition of the paint on the plaster taken from the Sauer Tavern wall to which the coin changer had been attached. The tire tool and the pinch bar also bore minute microscopic traces of various types of white, green, reddish orange, yellow and more white paint, which corresponded with various coats of paint which at previous times had been applied to the plaster to which the coin changer had been attached. Comparison of each of these paints with those found on one of the tools showed them to be alike. A greenish yellow paint found on one of the tools was like the greenish yellow paint found in the interior of the coin changer. A reddish yellow paint found on one of the exhibits corresponded with a reddish yellow paint found on one of the tools. Microscopic examination of the dents found in the doorsills taken from the Hathaway Grocery showed irregularities and imperfections which corresponded with irregularities and imperfections found in the tools taken from defendant's car; and paint found on one of these tools was like that found on the doorsill taken from the Hathaway Grocery entrance. The aforesaid exhibits were introduced in evidence and viewed by the jury during the testimony of the witness Patrolman Kenneth Miller.

There are nine assignments of error in the motion for new trial. Assignments

1, 2 and 9 deal with the contention that the evidence to connect defendant with the crimes with which he is charged is insufficient to support a finding that the pinch bar and tire tool found in defendant's car were the tools used in the burglary of and stealing from the tavern. Assignment 5 asserts that Instruction No. 2 insufficiently defines the quantum and type of evidence required to support a valid conviction of defendant based solely upon circumstantial evidence. These four assignments may be considered together. Instruction No. 2 advises the jury that "the State is not bound to prove its case by direct evidence; that is, by the testimony of a witness or witnesses who saw the act committed and can identify the Defendant as the person who committed the act (or participated in the commission of the act with another or others) for which he is on trial, but may establish his guilt by circumstantial evidence, provided the circumstances proven by the State are consistent with each other and wholly inconsistent with innocence of the accused and incapable of explanation upon any other reasonable theory except that of his guilt and satisfy you beyond a reasonable doubt that the Defendant was present at the time of the commission of the offense, if you find an offense was committed, and participated in the commission thereof." Contrary to defendant's contention, the instruction has been in substance many times approved by this court and it correctly defines and advises the jury of the requisites of evidence to support a finding of defendant's guilt of the crimes charged. State v. Brown, 356 Mo. 1037, 204 S.W.2d 729, 732; State v. Drake, Mo., 298 S.W.2d 374, 377; State v. Russell, Mo., 324 S.W.2d 727, 733. The question is, therefore, does the evidence in this case meet the requirements of the instruction?

■ Giving consideration to the direct and undisputed evidence of defendant's (and Jones') presence in Laredo and proximity to Spickard on the night of the burblary in the black Studebaker car with a Kansas license plate unlawfully displayed thereon; the evidence of finding of the same car in possession of defendant at his home on January 21 with a Missouri license issued to Max and Eula Hayden unlawfully displayed thereon; the evidence of the finding of the car at Richard Jones' home on January 23 with no license plate whatever thereon, in which car was found a partial carton of Pall Mall cigarettes of the same serial number as the cartons of Pall Malls stolen from the tavern; the evidence that plaster of the same texture and color as that on the wall from which the coin changer in the Sauer Tavern had been pried was found on one of the tools taken from defendant's car; and the evidence that numerous coats of paint of the colors and composition like those found on the doors of the coin and music boxes in the Sauer Tavern were also found on said tools: we are convinced that the evidence, considered in its entirety and in the light of the requirements of Instruction No. 2 above set forth, was sufficient to warrant the jury in finding beyond a reasonable doubt that the tools taken from defendant's car were those used in consummation of the burglary and theft of which defendant was convicted; and that the circumstances herein set forth were consistent with each other, wholly inconsistent with the innocence of defendant and incapable of explanation upon any reasonable theory other than that of defendant's guilt. The contention that the evidence does not support the verdict and judgment is overruled.

Assignments 3 and 4 challenge Instruction No. 1 on grounds that: (a) it did not conclude with the words "that unless you so find the facts to be, * * * you will find the defendant not guilty" and that the court, therefore, should have given a converse thereof; (b) it assumes that the premises were owned by Mr. and Mrs. Henry Sauer; (c) assumes that entry thereto was made with intent to steal; (d) assumes that the property stolen belonged to Mr. and Mrs. Sauer; (e) assumes the value of the property alleged to have been

stolen; and (f) fails to require a finding of felonious intent on the part of defendant. The instruction first defines the issues and declares the equal guilt of persons who act together with common intent in the commission of a crime. It then directs the jury that "if * * * you believe and find from the evidence, beyond a reasonable doubt, that at the town of Laredo, Grundy County, Missouri, on or about the 18th day of January, 1961, the Defendant, either acting alone or jointly with another or others, did willfully, feloniously and burglariously, break into and enter premises owned by and belonging to Mr. and Mrs. Henry Sauer, with the intent to steal, then you are instructed that you should find the Defendant guilty of burglary." It then continues: "If you further find and believe * * * beyond a reasonable doubt, that the Defendant did then and there willfully, unlawfully and feloniously take, steal and carry away approximately $50.00 in currency; 6 cases of Beer and 80 cartons of cigarettes, all being the property of Mr. and Mrs. Henry Sauer, and of an aggregate value exceeding $50.00, with the intent on the part of said Defendant to convert all of the same to his own use and to permanently deprive the said owners of the use and possession thereof then you are instructed that you should find the Defendant guilty of stealing."

██ In considering the contention that the court should have given a converse of the instruction, we think it should be read in connection with Instruction No. 3, which advises the jury that the law presumes the innocence of the defendant; that such presumption continues until overcome by evidence establishing his guilt beyond a reasonable doubt; that the burden rests upon the State to prove his guilt beyond a reasonable doubt; that if the presumption of his innocence had been overcome by the evidence and his guilt established beyond a reasonable doubt, it was the duty of the jury to convict; and, if the jury had a reasonable doubt of his guilt, it should acquit him, etc. When Instruction No. 1

is considered in connection with Instruction No. 3 and it is further noted that defendant neither offered nor requested a converse instruction, we must hold that the court is not to be convicted of error in not giving a converse of Instruction No. 1. State v. Nasello, 325 Mo. 442, 30 S.W.2d 132, 141; State v. Fraley, 342 Mo. 442, 116 S.W.2d 17, 20; State v. Chevlin, Mo., 284 S.W.2d 563, 567.

██ It is also clear that Instruction No. 1 did not assume that Mr. and Mrs. Sauer owned the tavern or the property stolen therefrom; to the contrary it conditioned defendant's guilt upon a finding that they did. Mrs. Sauer testified in substance that they did; and her testimony was neither contradicted nor disputed. That contention is likewise without merit. State v. Wyatt, Mo., 276 S.W.2d 86, 89; State v. Chernick, Mo., 303 S.W.2d 595, 599. Moreover, Instruction No. 1 shows on its face that it did not assume the value of the property stolen. In fact, however, when the jury found defendant guilty of burglary, the extent of the value of the property stolen, if of any value at all, became immaterial. § 560.110. And, finally, said instruction also shows on its face that the jury was required to find from the evidence that defendant acted with felonious intent in the commission of both the burglary and theft.

██ Assignment 6 complains of the giving of Instruction No. 4, relating to the credibility of witnesses, on grounds that it had "no place in the case" and "served as an implication that the witnesses for the state were speaking the truth." It is in conventional form. We find no wording therein indicating either that the witnesses for the state were or were not speaking the truth. There was no evidence in the case other than that adduced by the state and there was no apparent need for the instruction. But the giving of such an instruction lies to a great extent within the discretion of the trial court, and we find no prejudicial error in the giving of it

in this case. See State v. Turner, Mo., 320 S.W.2d 579, 585 [11–14].

■ Assignment 7 is that Instruction No. 5 was prejudicially erroneous in stating to the jury that it could "render such verdict as in your conscience and reason and candid judgment seems to be just and proper." It is contended that these words are in direct conflict with the presumption of innocence and "the law on reasonable doubt." The trouble with this contention is that the words complained of are lifted out of context. The instruction is a purely cautionary one. It reads: "The argument of counsel is for the purpose of aiding you to reach a proper verdict in the cause by refreshing in your mind the evidence which has been given to you in this cause, and by showing the application of the law thereto; but whatever counsel may say, you will bear in mind that it is your duty to be governed in your deliberations by the evidence as you understand it and remember it to be, and by the law as given by the Court in these instructions, and render such verdict as in your conscience and reason and candid judgment seems to be just and proper." It, in effect, directs the jury to base its verdict solely upon the evidence and the instructions of the court. We find no error in it. State v. Creighton, 330 Mo. 1176, 52 S.W.2d 556, 564 [18, 19].

■ Assignment 8 is that evidence of the fact of the burglary of the Hathaway Grocery and evidence that a tire tool and a pinch bar similar to those found in defendant's car were used in that burglary and evidence that defendant was arrested for stealing an automobile license plate "crept into the case" and was prejudicial to defendant. It is true that such evidence did come into the case but the record is barren of any objection made to it. In fact, counsel for defendant, on cross examination, went into detail with the witnesses concerning the findings made by State Patrolman Le-Page at the Hathaway Grocery and also the facts upon which defendant was arrested

for stealing a license plate; and when the state's attorney, after establishing without objection that certain exhibits (Nos. 9 and 10) were pieces of wood from the outer and inner doorsills of the Hathaway Store, offered said exhibits in evidence, counsel for defendant expressly stated, "No objection." We need not here determine whether the evidence tending to show that the tire tool and pinch bar taken from defendant's car were used in the burglary of the Hathaway Grocery would, under facts shown in this case, be competent as tending to prove that they were also the tools used in the burglary of the Sauer Tavern. (As to its admissibility for that purpose, see State v. Garrison, 342 Mo. 453, 116 S.W.2d 23, 24; State v. Gillespie, Mo., 336 S.W.2d 677, 682.) It is evident that defendant's experienced counsel either believed the evidence competent or deliberately chose not to object to it on the theory that it would be unfavorable to the state or would not be of sufficient probative value to be prejudicial to defendant. The trial court presumably considered the effect of the admission of such evidence in ruling the motion for new trial and did not deem that manifest injustice or a miscarriage of justice resulted from the admission of such evidence. Neither are we convinced that the admission of it constituted manifest injustice or resulted in a miscarriage of justice within the meaning of S.Ct. Rule 27.20(c), as amended effective January 1, 1960. 4 RSMo 1959, p. 4923, V.A.M.R.

■ During the pendency of this case in this court, defendant, through his aforesaid "unlearned-in-the-law next friend", filed a "Motion To File And Admit Exhibit of Evidence", which was taken with the case. The basis of the motion is that defendant has evidence (attached affidavits of Max M. Hayden and Pauline Hayden) that Pall Mall cigarettes bearing the identical serial number as those found in defendant's car were purchased from Patterson's Drug Store in Spickard, Missouri, in November, 1961. This court cannot consider this so-called additional "evidence". We

decide a case on appeal solely upon the assignments preserved in the motion for new trial. State v. Johnson, Mo., 286 S.W.2d 787, 796.

The information is sufficient. The verdict is responsive to the issues and the punishment assessed by the court is within the limits provided by law. Defendant was duly arraigned and entered plea of not guilty. He and his counsel were personally present throughout all stages of the proceeding. Allocution was granted and the judgment is in due form of law.

The judgment is affirmed.

All concur.