**STATE of Missouri, Respondent,**

**v.**

**Robert Gene REASK, Appellant.**

**No. 51786.**

Supreme Court of Missouri,

Division No. 2.

Nov. 14, 1966.

Motion for Rehearing or for Transfer to
Court En Banc Denied
Dec. 12, 1966.

Norman H. Anderson, Atty. Gen., Jefferson City, David G. Dempsey, Sp. Asst. Atty. Gen., St. Louis, for respondent.

David L. Campbell, James J. Rankin, St. Louis, for appellant.

PRITCHARD, Commissioner.

▉ Defendant was found guilty by the verdict of a jury of occupying premises for the purpose of recording bets (§ 563.350, RSMo 1959, V.A.M.S.) and his punishment was assessed by the jury at imprisonment in the County jail for a term of one year and a fine of $1,000. This being a felony conviction, we have appellate jurisdiction. Const. Mo.1945, Art. V, § 3, V.A. M.S.

On May 30, 1963, Sergeant Glen Kirchhoff of the St. Louis County Police Department began an investigation of defendant (which led to his subsequent arrest) after observing him enter the M. & M. Tobacco Store, 3625 Gravois Avenue, in St. Louis, Missouri. Defendant came out of the Tobacco store in a couple of minutes, walked to within 25 to 30 feet of Sergeant Kirchhoff who was sitting in his police car, and the Sergeant saw and recognized a "scratch sheet" being carried by defendant. On May 31, 1963, Sergeant Kirchhoff again saw defendant at the same location, going again into the M. & M. Tobacco Store and returning with a newspaper known as "Racing Forms" and a scratch sheet. On June 1, 1963, Sergeant Kirchhoff again saw defendant emerge from the Tobacco store carrying a scratch sheet. These occasions all took place about 10:00 a.m., and after the June 1st observance Sergeant Kirchhoff went to 9408 Mary Glen Court in Crestwood, Missouri, arriving at 10:25 a. m., where he met two police officers from St. Louis County Police Department, Detectives Jack Patty and Richard Craig, who were in an apartment there. At 11:19 a. m., defendant arrived at the same apartments and entered 9408a Mary Glen Court, which was directly above the apartment where the three police officers were. Sergeant Kirchhoff heard no noises from the apartment above prior to the time defendant arrived, but he heard the telephone ringing and a voice speaking thereafter. He previously had not heard defendant talk. After the telephone rang the voice answer-

ed, "Yeah. I haven't got the scratch sheets laid out yet. Wait awhile." While the conversation was going on the voice said, "Hold on a minute. I am on the other telephone." There were further conversations during which the voice said, "I got you down for fifty to win on the Cards"; "Okay, Phil, I got you down for one hundred on the Cards"; "Okay, McClain County in the first at Cahokia"; and "Who in the fifth at Washington Park." These voices were heard by Sergeant Kirchhoff between 11:42 a. m. and 12:50 p. m. To the best of his knowledge no one entered or left the upstairs apartment. At 12:50 p. m., Sergeant Kirchhoff left the apartment and met Captain Vassel, Sergeant St. Onge and Chief Al Steimel (of the Crestwood Police Department), after which he and the other officers went to the front door at 9408a Mary Glen Court and Captain Vassel knocked loudly on the door numerous times, to which there was no response. The officers then gained entrance to the apartment by breaking the bottom half of the door, after which Kirchhoff saw defendant, who was the only person there. There were four rooms in the apartment, two of which were bedrooms. There was also a bathroom located between one bedroom and the kitchen. There was a table in the southeast room upon which were two telephones, a radio, a clock ashtray and a piece of paper. The telephones rang while Kirchhoff was there and he answered them, roughly, twenty-five times. One of the voices wanted to place money on "Gold Security" in the first at Cahokia; one wanted to know what he owed; a female called wanting to know where "Bucky" was; one voice said, "Twenty to win on Teddy Galvin in the first at Washington Park"; one wanted to bet two hundred on the Cards to win; another wanted to bet twenty on the Cards; and there was another wanting to know what the odds were on the Cards. The telephones were removed by Southwestern Bell Telephone Company and the service disconnected at 3:00 p. m. After defendant's arrest Kirchhoff purchased a scratch sheet and Racing Form for the purpose of check-

ing the horses that were running that date against the telephone conversations. The scratch sheet showed a horse named "Gold Security" in the first race at Cahokia, also "McClain County" in the first race. On the "Daily Racing Form" there was a horse by the name of "Teddy Galvin" which was to run that day at Washington Park, Homewood, Illinois.

On cross-examination, Kirchhoff testified that he did not have a search warrant, nor did the other officers have one that he knew of. The racing form such as he purchased is available all over St. Louis and in the metropolitan area on public newspaper stands—it is not against the law to buy one.

On re-direct examination, Kirchhoff testified that prior to the time defendant was arrested he did not make an investigation to learn who was the lessee of the apartments, and he did not know to whom they were leased.

Captain Fred J. Vassel testified that he assisted in defendant's arrest. Vassel was a captain of the St. Louis County Police Department. With him at the time were Phil St. Onge, a sergeant; Kirchhoff, Detective Jack Patty, Richard Craig and Chief Steimel of the Crestwood Police Department. Vassel personally knocked on the door and shouted, "Police Officers open the door." No one came to the door, and after two or three minutes he forcibly opened the door—kicked it in, and found defendant and no one else inside the apartment. There was only one entrance to the apartment—the front door, with another door leading onto a balcony which was ten or twelve feet high. He saw no one enter or leave the premises for the fifty minutes he was there watching them. Vassel was in charge of the investigation, the other officers present acting under his direction. Vassel did not have a search warrant to enter the premises.

Phil St. Onge was a sergeant of the St. Louis County Police Department on June 1, 1963, being on that day with Captain Vassel. He assisted in defendant's arrest. Prior to going to the apartment, they picked up Chief Steimel of the Crestwood Police Department at its City Hall. St. Onge identified seven plastic envelopes, State's Exhibit 14, containing charred paper which he recovered from a metal pot or pan on the floor of the apartment.

Officer William Sahm, attached to the Bureau of Identification, Secret Service Division of the St. Louis County Police Department, arrived at the apartment where defendant was arrested about 2:00 p. m. on that day, with Detective George Randolph. On arrival, Sahm collected the contents of the seven plastic envelopes, State's Exhibit 14, containing charred paper. He was able to read with his naked eye on the bits of charred paper the words "Seven"; "entry"; "Addition"; "Dynamite"; "Second"; "First"; "2 o'clock"; "Three year"; "Pony"; numeral "6" and numeral "7" with the word "Gold" behind it; "Fifth" and "109"; "112–1"; "110" and "2–10"; "116"; "4–4"; "Truman"; etc. These numerals are the same as appear on State's Exhibit 11, a scratch sheet. Other words on the charred paper are: "Time 5:20"; "Ancient Greek"; "Smoke Stack"; "Robin"; "Dazzle Dancer"; "Dynamite"; "Addition"; "6 Furlong"; the latter word appears on State's Exhibit 11. Other words and figures appear on the charred bits of paper matching words and figures on the Cahokia Downs racing form. Officer Sahm also collected from a folding card table, on which were located two telephones, four ballpoint pens (3 blue and 1 black) and an edition entitled "Baseball News." On this edition, showing the games being played on Saturday, June 1, 1963, the Cardinals were playing San Francisco. Writing inserted in this area, where the two teams were listed, shows the numerals "10 over 11," with the words "Fischer" behind San Francisco and "Taylor" behind St. Louis, as probable pitchers. Some adding machine tape and wrinkled paper were also collected from the waste can and top of the card table. These bore the handwritten numerals

"1 dash 2, 1 dash 3, 1 dash 4"; "1 to 9; 3 to 9, 4, 5, 4, 5" on down. Sahm also found black material, which appeared to be charred paper, on the bath mat directly in front of the toilet bowl in the bathroom.

On cross-examination, Sahm testified that he found no money upon a search of defendant.

George Randolph, a detective of the St. Louis County Police Department, in the Bureau of Identification also, went to the apartment at 9409a Mary Glen Drive in the City of Crestwood, in St. Louis County, on June 1, 1963, arriving at about 2:00 p. m. He was summoned by Captain Vassel, with Gustave Sahm. Upon arrival Randolph took several photographs (State's Exhibits 27, 28, 29, 30 and 31) of the southeast room of the apartment.

Detective Jack Patty was also at the premises when defendant was arrested, going there with Detective Craig, and arriving about 10:00 in the morning and first sitting outside in an unmarked police car. He received a radio call from Kirchhoff stating that the person they were interested in was on the way. He saw defendant arrive from the apartment at 9408 Mary Glen Court, and after defendant arrived he heard telephones ringing from the apartment directly above. He heard a man's voice say "Fifty on the Cards"; "That's one hundred dollars on the Cards"; "Cahokia Downs"; and "Washington Park." Afterwards, Patty assisted in the arrest of defendant, breaking down the door to enter.

On cross-examination, Patty testified that he heard the telephone conversations above with his "bare ears," with no listening device.

Richard E. Craig, also a detective of the St. Louis County Police Department, went to the premises with Kirchhoff and Patty and saw the defendant arrive there. He also heard conversations from the overhead apartment: "Yeah, I got you, fifty to win on the Cards"; "Yeah, Phil, one hundred on the Cards"; "Third and fifth at Ca-hokia. How come you are not going with your boosters (?) the Cards?"

Chief Al Steimel, chief of police for the City of Crestwood, St. Louis County, for fifteen years and on June 1, 1963, went to 9408a Mary Glen Court on that date, at the request of Vassel and St. Onge. He arrived there about noon and entered 9408a premises, where he observed defendant. He did not search defendant, nor did he see him searched. Defendant was taken to his offices for booking.

Among the racing results of the St. Louis Post Dispatch for Sunday, June 2, 1963, for Cahokia, appear the results of the first race with names "McClean County" and "Gold Security." On Monday, June 3, 1963, the baseball results for Saturday were: "National League, Cardinals 7, San Francisco 4."

Geraldine Birkel had been the manager of the apartments where defendant was arrested for fifteen months. She had leased the premises at 9408a Mary Glen Court to a man by the name of Harold Herman, commencing May 1, 1963. She testified she had seen Herman on two or three occasions, and that defendant and Herman were not the same person.

The two telephones were installed in the name of Harold Herman on April 20, 1963 and in the name of Robert Hunter on May 1, 1963, according to installation records of Southwestern Bell Telephone Company.

After the state rested its case, and in chambers, defendant, by counsel, objected to the introduction of the tape in the adding machine (prior to the showing of exhibits to the jury) on the grounds that there was no explanation as to what the tape was, and there was no attempt to identify the tape, and that it was hearsay.

Defendant's first point is that the indictment is "unconstitutionally void and of no effect because it fails to charge any cause of action against the defendant in that it charges offenses in the alternative and in

the disjunctive and not in the conjunctive and because it does not apprise the defendant of the nature of the charges against him." The pertinent portions of the indictment of the grand jury are that defendant "did then and there wilfully, unlawfully and feloniously occupy certain premises known as 9408a Mary Glen Court, Crestwood, Missouri, with certain turf programs, listings of certain baseball games containing odds for betting thereon, and certain telephones, all for the purpose of recording or registering bets and wagers upon the results of trials *or* contests of skill, speed, *or* power, *or* endurance of man *or* beasts, to wit: horse racing and baseball games, which were to be held or were to take place within and without the State of Missouri; contrary to Section 563.350, Missouri Revised Statutes, in such case made and provided, and against the peace and dignity of the State." (Emphasis defendant's.)

The portions of said § 563.350 as here applicable are:

"Any person who occupies any room, shed, tenement, tent, booth or building, or any part thereof, in this state, and who occupies the same with any book, instrument or device for the purpose of recording or registering bets or wagers or selling any pools upon the result of any trial or contest of skill, speed or power of endurance of man or beast which is to be made or to take place within or without this state; or any person who records or registers a bet or wager, or sells pools, upon the result of any trial or contest of skill, speed or power of endurance of man or beast which is to be made or to take place within or without this state, or to register a bet on a horse race, either on a blackboard or any other substance, or to telephone a bet on a horse race to any other state to be registered there, or telegraph a bet for such purpose, or to use any other instrument or device to accomplish or register the bets, * * * shall, on con-

viction, be adjudged guilty of a felony, * * *."

■ The wording of the indictment does not follow the rule of the cases that where a statute sets forth separate acts of an offense in the disjunctive the charge of the commission of such acts must be in the conjunctive in order that defendant may properly be apprised of the offense charged. State v. Hartman, 364 Mo. 1109, 273 S.W.2d 198; State v. Settle, 329 Mo. 782, 46 S.W.2d 882; State v. Fox, Mo., 46 S.W.2d 544; State v. Barr, 326 Mo. 1095, 34 S.W.2d 477. The indictment does, however, substantially charge the offenses in the words of the statute, and we do not subscribe to defendant's suggestion that all the words used are not synonymous. Webster's New International Dictionary, Second Edition, defines a "trial" as: "1. The action or process of trying or putting to the proof; subjection of a person or thing to a test, examination, participation in a *contest* or competition, or the like; * * *." (Our emphasis.) The words "skill, speed, power and endurance," while not synonymous, do relate to the same condemned ultimate acts: recording or registering bets or wagers upon the results of horse racing and baseball games, and are merely descriptive of the activities of those trials or contests. So also with the words "man or beasts" as merely being descriptive of the participants of the trials or contests of baseball games and horse racing. The words of the indictment fairly charged and apprised defendant of the gravamen of the offense. Stated more briefly: that he occupied certain premises with betting equipment for the purpose of recording or registering bets and wagers upon the results of horse racing and baseball games. Clearly defendant knew, as would anyone, that this was the nature of the charge against which he would have to defend. He was not misled. Defendant's first point is overruled.

Prior to trial defendant moved the court to suppress evidence seized at the time and place of his arrest. The articles taken were

telephones, charred paper, adding machine tape, pencils, wrinkled paper, charcoal lighter, metal tray, and photographs were made of the interior of the apartment. Defendant's motion also was directed at suppressing evidence of the conversations overheard in the apartment by the police officers (who were situated in the apartment below 9408a). The ground of the motion, which was overruled by the trial court, was that the evidence was the product of an unconstitutional search and seizure, as here raised in defendant's Point II.

 The evidence of the state was that one Harold Herman was the lessor of the apartment in question at the time of defendant's arrest and the seizure of said articles of evidence. The first inquiry is, of course, the lawfulness of defendant's arrest. This inquiry turns upon the question of whether defendant was committing a felony within the presence of the arresting officers. The evidence is that defendant was in the act of recording or registering bets' and wagers upon horse racing and baseball game results in the presence of the officers—i. e., within their hearing, and so the jury could find. Defendant's suggestion, without citation of authority, that the officers' eavesdropping from the apartment below rendered his arrest illegal and the search unreasonable, is disposed of by the extensive discussion of the validity of such eavesdropping evidence in State v. Spica, Mo., 389 S.W.2d 35 et seq. (cert. den. 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312). The whole train of events, from officer Kirchhoff's observance of defendant in possession of racing forms and scratch sheets to the overheard telephone conversations relating thereto, reasonably led the officers to arrest defendant. In State v. Cantrell, Mo., 310 S.W.2d 866, it was held that the police officers, after observing defendant's and other occupants' suspicious actions of a slowly driven automobile in the early morning hours stopped the vehicle after which they saw a loaded rifle therein, could not be said to have acted arbitrarily or unreasonably in arresting defendant. The facts of that case show far less suspicious circumstances than the present case. Here, on two prior occasions Sergeant Kirchhoff observed defendant in the possession of racing forms and a scratch sheet. It is reasonable to believe that any suspicions he had that defendant was engaged in violating said statute were confirmed when he and the other officers overheard defendant's telephone conversations reasonably relating to taking bets and wagers on horse races and baseball games in the apartment above them. This led them reasonably to believe that a felony was being committed by defendant. In such circumstances legality was lent to the arrest without a warrant therefor. State v. Redding, Mo., 357 S.W.2d 103; State v. Witt, Mo., 371 S.W.2d 215; State v. Napper, Mo., 381 S.W.2d 789. The further inquiry is whether the officers, without a warrant, could legally enter the apartment where defendant was situated, arrest him and make a search of the premises. This depends on whether defendant was in a place protected by unlawful searches and seizures under U.S.Const., Amend. IV, and Mo.Const.1945, Art. I, § 15. The evidence, as noted, tends to show that defendant did not own or lease the apartment. This fact, plus the reasonable ground for arrest as above related, entitled defendant to no constitutional protection. Not only was the felony being committed in the officers' presence, but defendant was not in a place under his control or possession, either as tenant or owner. See State v. Pinto, 312 Mo. 99, 279 S.W. 144; State v. Askew, 331 Mo. 684, 56 S.W.2d 52; State v. Green, Mo., 292 S.W.2d 283; State v. Cantrell, supra; State v. Martin, Mo., 347 S.W.2d 680, all holding in effect that where a defendant fails to prove that he was either the owner or the person entitled to possession of the premises which were searched, the motion to suppress seized evidence was properly denied.

 Defendant says further that the St. Louis County Police officers had no

constitutional authority to make arrests in areas within incorporated areas in the county, citing Mo.Const.1945, Art. VI, § 18(c), and referring to State on Information of Dalton ex rel. Shepley v. Gamble, 365 Mo. 215, 280 S.W.2d 656, which held that the ordinance and charter amendment which gave birth to the St. Louis County Police Department (and which provided for the jurisdiction of the police in the incorporated area pursuant to contract with the governing body of the incorporated area) were constitutional. Defendant contends that there was no showing that such a contract existed, therefore the arrest by St. Louis County Police officers was illegal. The burden of proof that the arrest was invalid being upon defendant, State v. Duisen, Mo., 403 S.W.2d 574, 576 [3–5], it was incumbent upon him to show that no such contract existed between the City of Crestwood and St. Louis County. Furthermore, Chief Al Steimel of the Crestwood Police Department was at least present and participating in defendant's arrest, he made the subsequent booking and the list of defendant's property was handled by the St. Louis County police at Chief Steimel's request.

■ The arrest being lawful, according to this record, the arresting officers had the right to seize the evidence (relating to the commission of the crime) introduced at the trial. State v. Brookshire, Mo., 353 S.W.2d 681. These objects, as the record shows, were in plain view of the officers within the apartment, which also gave to them the right to seize such evidence. State v. Reagan, Mo., 328 S.W. 2d 26; State v. Engberg, Mo., 377 S.W.2d 282.

The matters discussed above dispose of defendant's contentions raised in his Point II relating to the validity of his arrest and the search of the apartment where he and the seized evidence were located. Point II is overruled.

■■ By Point III defendant contends that the trial court erred in admitting into evidence posed photographs and the posed adding machine and adding machine tape because they were hearsay and irrelevant. We find no objection whatsoever as to the admission of the photographs into evidence. Absent a timely objection in the trial court, prior to the admission into evidence of an exhibit, defendant may not raise an issue thereon for the first time on appeal. State v. Hernandez, Mo., 325 S.W.2d 494, 496 [3, 4]; State v. Griffin, Mo., 339 S.W.2d 803, 805 [4, 5]; State v. Deutschmann, Mo., 392 S.W.2d 279, 283 [7, 8]. We also find no objection to the adding machine. Defendant did make a timely objection to the adding machine tape prior to its being viewed by the jury upon the grounds, "that the tape in the adding machine apparently consisting of a series of figures which were added coming to substantial amounts and there is no explanation in the testimony as to what the tapes were from any witness and no attempt by any witness to explain or identify this tape in any way. My objection, therefore, is that this Exhibit No. 19, this tape in the adding machine, was rank hearsay and gave license to the jury to speculate and guess as to what the meaning of it might be, and thereby deprive the defendant any right of cross-examination or confrontation as guaranteed by the Constitution of the United States and the State of Missouri." Three photographs in evidence show the adding machine with a tape in it. Officer Sahm testified that he saw the tape in the apartment where defendant was arrested. His initials appear on the tape which was the way it was when he first saw it. Nothing further was offered by the state to prove anything about the tape or anything about the columns of figures thereon. No hearsay testimony was elicited, and the tape was admissible as a part of the evidence that defendant was conducting a wagering enterprise on the premises—i. e., that the adding machine was being used to record and add numbers

along with the other equipment in the apartment, as the jury could reasonably find. It was therefore relevant to the issue of defendant's guilt of the charge: occupying premises for the purpose of recording bets. Nothing was sought to be shown about the exhibit of a hearsay nature in these circumstances. Point III is overruled.

Defendant's Point IV attacks Instruction No. 1 of the state on the grounds that it contained a comment on the evidence and thus invaded the province of the jury; it was in variance with the statute (said § 563.350); and because it permitted the jury to find him guilty without requiring it to find the essential element of the crime charged that defendant possessed "books, instruments or devices" for recording bets as required by statute.

Instruction No. 1 required the jury to find beyond a reasonable doubt that defendant occupied the premises known as "9408a Mary Glen Court, Crestwood, in the County of St. Louis and State of Missouri, *with certain articles as mentioned in the evidence consisting of turf programs, listing of certain baseball games containing odds for betting noted thereon, and certain telephones, or any part thereof,* and if you further find and believe from the evidence beyond a reasonable doubt that the defendant did occupy the said premises with the said articles, if you so find, for the purpose of recording and registering bets and wagers upon the result of trials or contests of skill, speed or *power or endurance* of man or beasts, to wit: *baseball games and horse races which were to be held or to take place within and outside the State of Missouri,* then you will find the defendant guilty * * *." The italicized portions are the ones defendant attacks as being a comment on the evidence.

■ There was evidence that defendant was in the apartment with the articles, turf programs (racing news and scratch sheets with the names and odds of horses running thereon), the baseball games to be played, and telephones. The instruction requires the jury *to find* those facts, and does not assume as true (without proof) the same so as to bring the instruction within the condemnation of defendant's cited cases of State v. Rutherford, 152 Mo. 124, 53 S.W. 417; State v. Chinn, 153 Mo.App. 611, 133 S.W. 1196; State v. Smith, Mo., 252 S.W. 662; State v. Shields, 296 Mo. 389, 246 S.W. 932; State v. Johnson, Mo., 234 S.W. 794; and State v. Tatman, Mo.App., 291 S.W. 151. Rather, the instruction predicates a finding of defendant's guilt upon the finding that he occupied the premises with the betting or wagering equipment, and further, a finding for the purpose of recording bets and wagers upon the results of trials or contests of skill, etc. State v. Worley, Mo., 353 S.W.2d 589, 595 [5, 6]; State v. Chernick, Mo., 303 S.W.2d 595, 599 [4, 5]; State v. Wyatt, Mo., 276 S.W.2d 86, 89 [3]. In the latter case, the court noted that the closing words of the instruction, also used here, were "and unless you so find all the facts to be, you will acquit the defendant." The instruction also requires a finding, beyond a reasonable doubt, that the baseball games and horse races actually took place. There was evidence of those facts in documents introduced into evidence showing results of the races and games, and because of the requirement of a finding thereon by the jury, what we have said applies with equal force to defendant's contention that the instruction assumed that the baseball games and horse races actually took place (assuming that is a necessary element of the offense). There was evidence also that the documents seized from defendant "consisted" of turf programs, and "contained" odds for betting, and there was sufficient basis for the required finding by the jury that the articles in evidence were bookmaking devices and that the notations on the baseball lists were betting odds.

■ There is no merit in defendant's contention that the conjunctive submitted

finding that baseball games and horse races which were to be held or to take place within *and* outside the State of Missouri, directed the jury's attention to certain evidence and assumed the fact that these games and races were in fact to be held within *and* without the state. There was evidence that the games and races were in fact held outside the state (Cahokia Downs and Washington Park, both in Illinois, and the baseball game at San Francisco, California), and with the required finding thereon there was no assumption of fact. That there apparently were no such games and races held within this state is immaterial to the charge of bookmaking.

 With respect to defendant's further contention that the offense outlined in the instruction being at variance with the statute, he alludes to the words used in the instruction, "power *or* endurance," whereas the statute (said § 563.350) uses the words "power of endurance." Probably, this was a typographical error, but we deem that variance to be immaterial. Defendant did not raise this objection in his motion for new trial so as properly to preserve it for review, but, nonetheless, we are of the opinion that this technical variance did not prejudice defendant, especially when the instruction is read and the evidence considered as a whole; and as the words refer to baseball games and horse races specifically, it removes any doubt as to the words used.

Defendant's last contention is that the instruction did not require a specific finding that turf programs, listing of baseball games and telephones were "devices for the purpose of recording or registering bets or wagers." The essential elements of the offense were that defendant occupied the premises using articles (i. e., the Daily Racing Form, the scratch sheet, pencils, telephones, adding machine and tape, as the evidence shows) to record and register bets—bookmaking. It was well explained in evidence that the use of the described articles was incident to the offense charged. It was unnecessary that a further finding be required that these articles were devices for the purpose of recording bets under this record. Point IV is overruled.

We have examined the matters specified in Criminal Rule 28.02, V.A.M.R., and find no error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.